**Eugene V. Swanson, Plaintiff-Appellant, v. Arthur A. Swanson, Defendant-Appellee.**

**Gen. No. 53,115.**

First District, Fourth Division.

February 25, 1970.

Asher, Greenfield, Gubbins and Segall, of Chicago (Irving D. Levin, of counsel), for appellant.

Robert J. O'Rourke and Donald A. Carr, of Chicago, for appellee.

MR. PRESIDING JUSTICE STAMOS delivered the opinion of the court.

Plaintiff, Eugene Swanson, brought an action for damages against defendant, Arthur Swanson, for the in-

tentional infliction of mental distress. Defendant's motion to strike the complaint for failure to state a cause of action was denied. At the close of plaintiff's evidence, defendant moved for a directed verdict which was granted. Plaintiff appeals.

Plaintiff and defendant are brothers. Their mother, Emma Swanson, had resided with defendant for approximately six months during the early part of 1950, but had then moved to plaintiff's home pursuant to an agreement whereby each of the two brothers would care for their mother for six month intervals. She, however, continued to reside with plaintiff until February 11, 1961, when she was taken by plaintiff to defendant's residence. Plaintiff testified that he told defendant to care for the mother over the weekend while he and his wife left town to visit his mother-in-law. However, defendant as an adverse witness under Ill Rev Stats, c 110, § 60 (1967) testified that plaintiff stated, "That's your mother. We don't want to see her or you anymore."

On February 13, 1961, defendant placed his mother in the Sutton Nursing Home, Belvidere, Illinois, on the advice of Dr. Nelson who had allegedly examined her six months prior to this occurrence. Defendant gave the Home his telephone number to be used in case of emergency, but failed to give plaintiff's number.

Plaintiff testified that after returning from the weekend trip, he attempted to take his mother back home, but defendant refused to tell him of her location. Plaintiff then traced his mother to the Home by making numerous phone calls. When he visited her at the Home, he failed to leave his telephone number.

On August 17, 1961, the mother died and the Home promptly notified defendant who made arrangements for the funeral on August 19, 1961. Defendant testified that he deliberately failed to inform plaintiff of the mother's death, and further, deliberately failed to cause an obituary to be published. Plaintiff learned of his

mother's death five days after the funeral and allegedly, as a result of being unable to attend, suffered severe emotional distress. Plaintiff testified:

> "I was shocked to hear that she had passed away. I was very nervous about it and had many sleepless nights. Kept thinking about it all the time. Yet to this day I think I am going to have nightmares of this situation."

OPINION

██ ██ The issue presented for review is whether the trial court properly granted defendant a directed verdict. The applicable standard is enunciated in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504:

> ". . . verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Since plaintiff seeks recovery for the intentional infliction of mental distress, the Pedrick test, supra, must be applied to the evidence in conformity with the precepts of Knierim v. Izzo, 22 Ill2d 73, 174 NE 157 (1961).

In Knierim, supra, the plaintiff sought recovery for the intentional infliction of severe mental distress allegedly caused by defendant's threats to kill her husband and the subsequent fulfillment of those threats. The court held that the complaint stated a cause of action and in so doing adopted this tort in Illinois for the first time. The cause of action, as enunciated therein, allows compensatory damages for the disturbance of mental equanimity where one, intending to cause "severe emotional distress" in another, acts in a manner "calculated to cause

[it] in a person of ordinary sensibilities" and, in so doing, actually precipitates it. In discussing what constitutes "severe emotional distress" the court stated at page 85:

> "It has not been suggested that every emotional upset should constitute the base of an action. Indiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts, and the law should aim to toughen the psyche of the citizen rather than pamper it. But a line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional action wholly lacking in social utility.
>
> "The stronger emotions when sufficiently aroused do produce symptoms that are visible to the professional eye. . . ."

The only subsequent Illinois case construing conduct in light of the above tests was March v. Cacioppo, 37 Ill App2d 235, 185 NE2d 397 (1962). The plaintiff therein alleged that the defendants on the basis of a void or exorbitant judgment intentionally garnished plaintiff's bank account for a period of time including the Christmas season thereby causing severe emotional distress. In affirming a dismissal of the action, the court stated at page 243:

> "We do not believe that the distress which would be suffered by a person of ordinary sensitiveness from the facts related would be the severe mental disturbance contemplated by the Knierim decision."

██ In the instant case plaintiff testified that he was nervous and had many sleepless nights and he thought he was going to have nightmares about it. He

did not receive nor seek medical aid for his condition. These circumstances do not show, as required by Knierim, a "severe emotional disturbance."

Upon this record, we find that the trial court properly directed a verdict and we therefore affirm the judgment.

Judgment affirmed.

DRUCKER and LEIGHTON, JJ., concur.