Jesse A. X. COOPER et al., Appellants,

v.

Walter M. RIDDLE, Superintendent of
the Virginia State Penitentiary,
Appellee.

No. 75–1573.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1976.

Decided Aug. 2, 1976.

Jamie Lee Hingle, Jack Griffeth and Dan
Dugan, Third Year Law Students (Donald
H. Beskind, Denver, Colo. [court-appointed
counsel] and Kathryn A. Gibbons, Third
Year Law Student, on brief), for appellants.

Stuart Bateman, Asst. Atty. Gen., Rich-
mond, Va., and (Andrew P. Miller, Atty.
Gen. Richmond, Va., on brief), for appellee.

Before RUSSELL and WIDENER, Cir-
cuit Judges, and FIELD, Senior Circuit
Judge.

FIELD, Senior Circuit Judge.

Jesse A. X. Cooper, on behalf of himself
and ten other prisoners, instituted this ac-
tion against the Superintendent of the Vir-
ginia State Penitentiary pursuant to 42
U.S.C. § 1983. The plaintiffs alleged that
their procedural due process rights had
been violated by the Institutional Classifi-
cation Committee (ICC) in its reclassifica-
tion of each of them into maximum security
status. The defendant filed a motion for
summary judgment supported by affidavits
and exhibits which was granted by the dis-
trict court, and the plaintiffs have appealed.

In the Virginia Correctional System there
are two committees which deal with the
custodial status of prisoners. The Institu-
tional Adjustment Committee (IAC) deals
directly with prisoner discipline while the
ICC is charged only with prisoner classifica-
tion. The ICC makes general institutional
placements of inmates and reviews all se-
curity classifications and job assignments.
It is not used to administer corrective ac-
tion or to punish an inmate, and its fore-
most consideration is the safety and welfare
of both the inmates and the institution.
The IAC, on the other hand, addresses itself
to the violation of prison rules and regula-
tions, and in any case where punitive action
appears to be appropriate the inmate is
referred to the IAC.

In the present case Cooper and his fellow
plaintiffs were transferred to maximum se-
curity by the ICC in the wake of episodes of
prison violence in which they were allegedly
involved. The district court, in granting
the defendant's motion, concluded that
while the procedural requirements delineat-
ed in *Wolff v. McDonnell*, 418 U.S. 539, 94
S.Ct. 2963, 41 L.Ed.2d 935 (1974), might
appropriately be directed to the IAC, they
were not applicable to reclassification pro-

ceedings of the ICC.[1] In challenging this conclusion of the district court, the plaintiffs in their brief and oral argument placed primary reliance upon *Clutchette v. Procunier*, 497 F.2d 809 (9 Cir. 1974), modified on rehearing, 510 F.2d 613 (1975), and we deferred disposition of this appeal pending the decision of the Supreme Court in that case.[2]

In *Clutchette* the court of appeals had held that in a disciplinary proceeding an inmate was entitled to counsel; prison authorities should provide reasons in writing to inmates who were denied the privilege of cross-examination or confrontation of witnesses against them; and that minimum due process—such as notice, opportunity for response, and statement of reasons for action by prison officials—was necessary where inmates were deprived of privileges.[3] The Supreme Court reversed[4] and in the course of its opinion reiterated its conclusion in *Wolff* that inmates do not " 'have a right to either retained or appointed counsel in disciplinary hearings.' "[5] The Court further observed that "[m]andating confrontation and cross-examination, except where prison officials can justify their denial on one or more grounds that appeal to judges,"[6] was an inappropriate intrusion upon the area "that *Wolff* had left to the sound discretion of prison officials."[7] Finally, with respect to notice, opportunity for response and statement of reasons by prison officials, the Court observed that the procedures required by the court of appeals were either inconsistent with *Wolff* or premature in the light of the record in that case.

Following closely upon *Clutchette*, the Court handed down its decision in *Meachum v. Fano*, —— U.S. ——, 96 S.Ct. 2532, 48 L.Ed.2d —— (1976), which bears even more directly upon the case before us. In *Meachum* certain prisoners were suspected of involvement in serious fires in the institution and were transferred to a maximum security institution by the Classification Board. Holding "that the Due Process Clause does not impose a nationwide rule mandating transfer hearings," the Court stated:

> "That an inmate's conduct, in general or in specific instances, may often be a major factor in the decision of prison officials to transfer him is to be expected unless it be assumed that transfers are mindless events. A prisoner's past and anticipated future behavior will very likely be taken into account in selecting a prison in which he will be initially incarcerated or to which he will be transferred to best serve the State's penological goals." *Id.*, —— U.S. at ——, 96 S.Ct. at 2540.

A clear and unequivocal disclaimer that federal courts are to assume the role of super wardens of state penal institutions is found in the following observation:

> "Holding that arrangements like this are within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges. We decline to so interpret and apply the Due Process Clause.

1. Although the district court concluded that *Wolff* was not applicable to the ICC, it noted that the written procedures used by that committee appeared to be in substantial compliance with the due process dictates of *Wolff*. The affidavit of the Chief Counselor of the Virginia State Penitentiary, which was corroborated by exhibits, stated that when an inmate is subject to possible reclassification to a higher security status he is entitled to a twenty-four written notice of the ICC meeting and allowed to appear in his own behalf. Additionally, he must be given written findings and a brief summary of the reasons for any reclassification and his status must be reviewed within 120 days.

2. Certiorari had been granted *sub nom. Enomoto v. Clutchette*, 421 U.S. 1010, 95 S.Ct. 2414, 44 L.Ed.2d 678 (1975).

3. 510 F.2d, at 615.

4. *Enomoto v. Clutchette*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

5. Id., 425 U.S. at 315, 96 S.Ct. at 1556.

6. Id., 425 U.S. at 322, 96 S.Ct. at 1560.

7. Id., 425 U.S. at 322, 96 S.Ct. at 1560.

The federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States." *Id.,* —— U.S. at ——, 96 S.Ct. at 2540.

In the light of these latest pronouncements of the Court, the judgment of the district court is affirmed.

*AFFIRMED.*