**Claude Z. LAMB, Jr.**

v.

**Terrell D. HUTTO et al.**

**Civ. A. No. 78–0498–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

March 29, 1979.

Claude Z. Lamb, pro se.

Guy W. Horsley, Jr., Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Claude Z. Lamb, Jr., an inmate at the Mecklenburg Correctional Center of the Virginia Correctional System, proceeding *pro se,* brings this action *in forma pauperis* under 42 U.S.C. § 1983 (1970). Jurisdiction of the Court lies under 28 U.S.C. § 1343(3) (1970). Plaintiff's first claims allegedly arose while plaintiff was incarcerated in the Virginia State Penitentiary and the second while plaintiff was incarcerated at the Mecklenburg Correctional Center. Defendants have filed motions for summary judgment under Rule 56, Federal Rules of Civil Procedure, accompanied by supporting affidavits. Plaintiff responded to defendants' motion by restating his claims supported by the affidavits of five (5) fellow inmates. Defendants' motions for summary judgment are therefore ripe for disposition.

Plaintiff alleges that, while he was confined at the Virginia State Penitentiary in March, 1977, defendants Zahradnick and Kennedy threatened to transfer him to the Mecklenburg Correctional Center for his refusal to withdraw a statement that he was to offer on behalf of another inmate during a hearing. Plaintiff further alleges that, after a prison demonstration in August, 1977, he was falsely accused of creating and participating in a disturbance during that demonstration and subsequently transferred to the Mecklenburg Correctional Center. Plaintiff's inference, of course, is that defendants used his alleged participation in the August disturbance as a pretext for carrying out their threat allegedly made in March. Plaintiff alleges next that, although he was given an Institutional Classification Committee ("I.C.C.") hearing prior to his transfer, defendants failed to follow their own procedures at the hearing.

After his arrival at the Mecklenburg Correctional Center, plaintiff contends that on December 24, 1977 defendants Nordan, Tuck, Bacon, and Everett, officers of that center, came to his cell to move him to another complex, restrained him with handcuffs and a belt, and then without cause beat, kicked, and dragged him from his cell, through the building he had been assigned to, across the grounds into Building 5. Finally, plaintiff contends that after the December 24, 1977 incident, prison officials have threatened him and stopped his incom-

ing and outgoing mail. Plaintiff's complaints will be addressed with reference to where the alleged deprivations took place.

Liberally construing the complaint as required by *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), plaintiff's claims regarding the Virginia State Penitentiary may be summarized as (1) infringement of his First Amendment rights by the allegedly unjustified transfer to Mecklenburg, and (2) denial of procedural due process at his transfer hearing. Plaintiff's complaint with reference to the Mecklenburg Correctional Center alleges (1) violation of the Fourteenth Amendment when he was beaten, (2) violation of the Fourteenth Amendment when he was threatened, and (3) denial of his First Amendment rights by virtue of the stopping of his mail.

*State Penitentiary Claims*:

 Plaintiff contends he was punished by defendants Kennedy and Zahradnick for refusing to retract or withdraw a statement he intended to make on behalf of another inmate. The Court is of the view that plaintiff's allegations in this regard state an actionable claim under the First Amendment's guarantee of freedom of expression. Of course, a prisoner has no absolute right or entitlement to testify at a hearing on behalf of another inmate. *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In order validly to limit a prisoner's First Amendment rights, however, a regulation or practice must "further an important or substantial governmental interest unrelated to the suppression of expression . . . [and] . . . must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974). Thus, defendants under appropriate circumstances could have precluded the plaintiff from making any statement. For example, the defendants conceivably could have precluded the statement in the interest of security. There is an obvious distinction, however, between preclusion for security or

other valid reasons and punishing plaintiff for not retracting a statement of no particular significance other than the fact that it was to be offered on behalf of another inmate. The controlling issue, therefore, is whether defendants transferred plaintiff to silence him or for other, constitutionally permissible, reasons. This situation is somewhat analogous to that which led the court in *Cavey v. Levine*, 435 F.Supp. 475, 481 (D.Md.1977) to find that the warden in that case:

> by deliberately ordering the institution of disciplinary proceedings against [the inmate], brought into play a form of censorship calculated to restrain Cavey from any further attempts to communicate his version of the McMahon suicide incident . . . utiliz[ing] prison regulations in a manner violative of plaintiff's First Amendment rights.

Examining issues analogous to those raised by the instant case, the Second Circuit declared, "[o]ur holding that prisoners may not be punished for their beliefs carries the necessary corollary that we may not permit punishment for the mere expression of those beliefs. One can hardly speak of beliefs apart from their expression." *Sostre v. McGinnis*, 442 F.2d 178, 202 (2d Cir. 1971).

That a transfer does not generally give rise to due process rights in no manner negates the fact that a transfer may be used as a punitive and retalitory measure for the exercise of protected constitutional rights. The Supreme Court has examined similar situations involving the failure to rehire nontenured public employees. It is worth noting that such decisions (i. e. whether or not to rehire) are also, like inmate transfers, largely discretionary in nature and can often validly be made for any reason or no reason. In *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), however, the Court held that a public employee had a valid claim to reinstatement if the decision not to rehire him was made because of the employee's exercise of constitutionally protected First Amendment freedoms. This ruling was limited somewhat by a unanimous decision

in *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 286, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977):

> A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But [the] same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

Thus the Court determined that the employee could establish a constitutional violation only by showing that the decision not to renew the contract would not have been made absent the occurrence of the constitutionally protected conduct.

■ Applying the above rationale to the instant suit requires the Court to determine if plaintiff's transfer was justifiable on grounds other than his alleged refusal to succumb to defendants' alleged threats. In this regard, the Court notes that defendant Kennedy has offered an affidavit expressly contradicting plaintiff's version of the conversation regarding whether any threats were ever made. More importantly, in the statement of reasons given plaintiff by defendants explaining why he was being transferred, defendants cite not only plaintiff's participation in the prison disturbance, but also a history of institutional violations. Because plaintiff's participation in the disturbance and his history of disciplinary troubles stand unrebutted, defendants' decision to transfer plaintiff has more than adequate independent validity. There being no genuine issue of material fact with respect to this claim, defendants' motion for summary judgment will be granted on this issue.

■ Generally, a prisoner enjoys no constitutionally protected expectation to a particular institutional classification or to continue to be incarcerated at any particular institution. *Ward v. Johnson*, 437 F.Supp. 1053, 1055 (E.D.Va.1977); Code of Va. § 53–19.17 (1974). Specifically, the Supreme Court has stated in *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976):

> [N]o Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing . . . [Due process] does not require hearings in connection with transfer whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive.

■ On the other hand, however, if an inmate can establish that a "justifiable expectation" to a pre-transfer hearing is "rooted in state law," then the general rule does not apply, and a due process right arguably has been created. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Russell v. Oliver*, 552 F.2d 115, 117 (4th Cir. 1977); *Cooper v. Riddle*, 540 F.2d 731, 732 (4th Cir. 1976). In Virginia, although not constitutionally required, it appears to be standard practice that pre-transfer hearings, conducted according to published procedural standards, are afforded inmates who are about to be reclassified or transferred to a higher security level. *Cooper v. Riddle, supra*, at 732; *Peterson v. Davis*, 421 F.Supp. 1220, 1223 (E.D.Va.1976). The Court concludes therefore that reliance upon published institutional regulations is the equivalent of a "justifiable expectation rooted in state law." *Prince v. Bridges*, 537 F.2d 1269, 1271–72 (4th Cir. 1976).[1]

■ The record indicates that Virginia prison inmates under consideration for

---

1. In *Meachum, supra*, the Court noted that "[t]he liberty interest protected in *Wolff* had its roots in state law, and the minimum procedures appropriate under the circumstances were held required by the Due Process Clause 'to insure that the state-created right is not arbitrarily abrogated.'" 427 U.S. at 226, 96 S.Ct. at 2539 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)).

transfer are entitled to notice of the charges and an opportunity to call witnesses. It cannot be finally determined from the pleadings whether plaintiff was appropriately informed of the charges against him [2] or whether he was allowed to call witnesses on his own behalf.[3] Thus the Court cannot at this time determine that no state of facts could exist upon which recovery could be based. *Aulds v. Foster*, 484 F.2d 945 (5th Cir. 1973). Plaintiff will be granted thirty (30) days to amend his complaint clarifying what, if any, notice was received and how it was deficient. Similarly plaintiff will be granted thirty (30) days to clarify how his procedural rights were violated with regard to the calling of witnesses at the I.C.C. hearing. Specifically plaintiff should indicate how and when he requested witnesses for the I.C.C. hearing and name the witnesses he desired to be present.

■ Plaintiff was not, however, deprived of any cognizable right by defendants' failure to provide counsel at the hearing. An inmate does not have a constitutional right to counsel at a prison disciplinary (or transfer) hearing. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Nor did plaintiff have any justifiable expectation to counsel based on the institution's procedural regulations.[4]

*Mecklenburg Correctional Center Claims* :

■ Plaintiff has alleged conduct at Mecklenburg that, if proven, would constitute a violation of the Fourteenth Amendment. Not every tort alleged to have been committed by a prison official states a constitutional claim. *Meredith v. Arizona*, 523 F.2d 481 (9th Cir. 1975); *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973). Within the context of the Eighth Amendment, punishment is defined as a deliberate action administered for a penal or disciplinary purpose, with the apparent authorization of high prison officials charged with the care and control of prisoners. In this sense, the alleged spontaneous attack by prison guards, most certainly not condoned by the Court, may not be deemed to be punishment. *Johnson, supra*, at 1032.

■ It is possible, of course, to establish a violation of the rights protected by the Fourteenth Amendment on the basis of a single incident. The Courts have held that conduct that can be classified as offensive to human dignity can constitute a deprivation of liberty. *Meredith v. Arizona, supra*,

2. Plaintiff's allegations on this point are not clear to the Court. Defendants have produced a copy of a notice of I.C.C. hearing stating that plaintiff's classification would be reviewed with respect to plaintiff's involvement in a sit-down strike and his overall prison record. Plaintiff did not sign the form and it is linked to the plaintiff only by defendants' contentions and the fact that plaintiff's name and number are typed on the document. If it is plaintiff's contention that this notification of charges was received but was insufficient, it is of course without merit. Plaintiff's complaint admits he was informed generally of the contents of the form presented, if not the written notification contemplated by the prison procedures. If the ambiguity of the complaint is meant to allege that plaintiff received some notification, but not that which he reasonably expected on the strength of the prison regulations, then plaintiff is at least entitled to present a due process claim. In accordance with *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), plaintiff's claim will not be dismissed at this time.

3. The plaintiff's complaint states that he was not allowed to present "rebuttal witnesses." This of course could be understood to indicate that plaintiff was given an initial opportunity to call witnesses but only attempted to do so later in an effort to rebut defendants' evidence. *Haines v. Kerner, supra*, requires a more generous interpretation of the complaint at this stage of the proceedings. Thus the Court will not attribute to the plaintiff knowledge of legal terms that he is not likely to possess.

4. Although State regulations provide that inmates will be given the opportunity to obtain legal assistance when appearing before Adjustment Committee hearings, see Department of Corrections Division of Adult Services Guidelines for the Commonwealth of Virginia, Guideline Number 861, par. VI, subpar. C, part 3(a) (pp. 16–17), they further specifically state "inmates *will not* be permitted to have employed legal counsel present during formal classification proceedings." See Department of Corrections Division of Adult Services Guidelines for the Commonwealth of Virginia, Guideline Number 821, par. IX, subpar. B, part 3(d) (p. 16).

at 483. Plaintiff's contention that he was, without cause, continuously beaten, kicked, and dragged throughout the building he was assigned to, across the grounds, and into Building 5 (where he was to be transferred), certainly describes conduct that can be labeled as "offensive to human dignity." Defendants' affidavits denying plaintiff's contentions have been rebutted by affidavits submitted by five (5) of plaintiff's fellow inmates. Defendants' motion for summary judgment on this issue will therefore be denied.

 Defendants' contention that plaintiff was afforded due process when he was permitted to present his claims to a state magistrate (who determined the claims did not require the issuance of warrants against the defendants) is without merit. Although a magistrate in the State of Virginia is authorized to issue warrants, Virginia Code § 19.2–45 (1978 Cum.Supp.), this process is strictly a state criminal remedy. The remedy provided by 42 U.S.C. § 1983 (1970) is supplementary to any state criminal remedy arising out of the same facts.

Plaintiffs claim for relief based on the alleged threats by Mecklenburg officials is completely without merit. The Supreme Court has ruled that verbal assaults and threats do not state a constitutional claim actionable under 42 U.S.C. § 1983 (1970). *Paul v. Davis,* 424 U.S. 693, 703, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The claim regarding threats by the defendants will, therefore, be dismissed.

It is well settled that stopping an inmate's mail may constitute an action for violation of First Amendment rights. *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Lawrence v. Davis,* 401 F.Supp. 1203 (W.D.Va.1975). It is also obvious that certain rights, even fundamental rights, become subject to valid limitation upon incarceration. *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Under the present state of the pleadings plaintiff's vague allegation of an unspecified mail stoppage is insufficient to support any determination regarding whether plaintiff's rights have been violated or merely lawfully infringed upon. Plaintiff will therefore be granted thirty (30) days in which to amend this claim if he be so advised. If at the expiration of that time plaintiff has not stated a constitutional claim, this portion of his complaint will be dismissed.

Finally the Court feels that in order for the issues raised by the complaint to be fully and fairly litigated plaintiff should not be forced to proceed *pro se. Cook v. Bounds,* 518 F.2d 779 (4th Cir. 1975). Thus to ensure that the right of access to courts is truly meaningful, plaintiff's motion for the appointment of counsel will be granted.

An appropriate order shall issue.