**Jerry WILLIAMS**

v.

**E. STACY, Superintendent.**

**Civ. A. No. 78–0618–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

April 12, 1979.

---

Jerry Williams, pro se.

Guy W. Horsley, Jr., Asst. Atty. Gen. of Virginia, Richmond, Va., for Stacy.

## MEMORANDUM

WARRINER, District Judge.

Jerry Williams, an inmate at the Pocahontas Correctional Unit proceeding *pro se*, brought this action *in forma pauperis* under 42 U.S.C. § 1983 (1970). Jurisdiction of this Court is derived under 28 U.S.C. § 1343(3) (1970). Defendants have moved for summary judgment under Rule 56 Fed. R.Civ.P. The plaintiff has responded. It is this motion which is now before the Court.

Plaintiff's claims for relief arise from the events following plaintiff's partici-pation in the composition, circulation and submission to Terrell D. Hutto (Director of the Virginia Department of Corrections) of a petition complaining about the alleged conditions of confinement at the Pocahontas Correctional Unit. Plaintiff has attached a copy of this petition to his complaint. It is not clear to the Court, whether plaintiff seeks judicial determination of all of the allegations stated in the petition in addition to those stated in his complaint or only offers the petition in support of his affirmatively alleged claims. In accord with *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court will construe the complaint as incorporating all the allegations included in the petition.

Plaintiff's claims will be divided into two groups for consideration—those stated in the petition and those involving defendant's conduct after the submission of the petition to Director Hutto. The allegations stated in the petition may be summarized as follows: (1) the prison officials discriminate against the inmates in the Pocahontas Correctional Unit on the basis of their race; (2) the prison officials subject the Black inmates of the Pocahontas Correctional Unit to mental, verbal and physical abuse; (3) the inmates have been denied access to the courts due to the inadequate law library at the unit; (4) the inmates are forced to work "in well below freezing temperatures and sometimes rain and snow"; (5) the work foreman withholds top performance without cause, and thus the inmates are "cheated out of pay" and (6) inmate Alexander Bethea was brutally beaten without cause by named prison officials. The allegations arising after the submission of the petition to Director Hutto may be summarized as follows: (1) a denial of plaintiff's right of access to the courts; (2) a deprivation of plaintiff's due process rights by failing to conduct the ICC proceedings and then failing to remove the notice of hearing from plaintiff's conduct file; (3) a deprivation of plaintiff's First Amendment rights; (4) threats by defendant Stacy that "the administration would take action against [plaintiff]" for his involvement with the

petition; and (5) a denial of plaintiff's Eighth Amendment rights.

## I.

■ In considering the allegations stated in the prison petition, the Court notes that "[i]n order to state a civil rights claim upon which relief can be granted under 42 U.S.C. § 1983, one must allege that he, himself, sustained a deprivation of a right, privilege or immunity secured to him by the Constitution." *Inmates v. Owens*, 561 F.2d 560, 562–563 (4th Cir. 1977). Thus, the first five claims as stated in the petition cannot now be considered by the Court because the plaintiff has failed to demonstrate what affect, if any, the alleged violations have had upon plaintiff's *own* constitutional rights. Similarly, the sixth claim, as stated, cannot be considered by the Court because "[one prisoner] cannot sue for deprivation of another prisoner's civil rights under [42 U.S.C.] § 1983." *Inmates, supra; Matthews v. Reynolds*, 405 F.Supp. 50, 51–52 (W.D.Va. 1975). Accordingly, plaintiff is granted 30 days in which to file an amended complaint stating a claim for injury to himself for which relief can be granted under 42 U.S.C. § 1983 (1970).

## II.

■ Turning to the allegations covering defendant's actions in response to the petition, the Court will first consider the first and fourth claims (as outlined above). Plaintiff first alleges that the institution of ICC proceedings by defendants pursuant to his involvement with the submission of the petition to Director Hutto constituted a denial of the right of access to the courts. This claim has no merit. The petition in question referred to the guards as "Nazis" and "maniacs" and warned that the situation in the Pocahontas Correctional Unit

could easily develop into "another Attica." Clearly the circulation of a petition phrased in such terms, regardless of the veracity of the substantive claims, would create serious security concerns on the part of prison officials. Thus, it was within the discretion of the defendant to prevent any subversion of prison discipline or security. *Pittman v. Hutto*, 448 F.Supp. 61 (E.D.Va.1978), *aff'd* 594 F.2d 407 (4th Cir. 1979); *Sostre v. McGinnis*, 442 F.2d 178, 202 (2nd Cir. 1971); *Peterson v. Davis*, 421 F.Supp. 1220, 1221–1223 (E.D.Va.1976).

Additionally, the institution of ICC proceedings in no way limited plaintiff's access to the courts, as evidenced by this complaint. Even assuming the defendant's action constituted punishment, it could not be considered an actionable abridgement of plaintiff's rights because those rights may be reasonably limited pursuant to incarceration. *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

■ Plaintiff's claim further alleges that he was threatened by defendant Stacy and told "the administration would take action against [the plaintiff]" for his involvement with the petition. Accepting the allegations as true, they do not establish a constitutional claim for which relief can be granted under 42 U.S.C. § 1983 (1970). Unlike the case of *Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978),[1] defendant in the case at hand did not threaten plaintiff in an effort to quash his access to the courts, but rather, defendant Stacy merely informed the plaintiff that administrative action would be taken for plaintiff's participation in an activity which Stacy considered jeopardizing prison discipline and security. Furthermore, assuming plaintiff's conclusory allegations of unspecified mental anguish and suffering state an actionable claim in tort,[2] it is a claim whose vindica-

---

1. *Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978) held that an alleged threat of physical harm to a prisoner if he persists in his pursuit of judicial relief can constitute an unconstitutional denial of access to the courts.

2. The Court notes in passing that although some jurisdictions have recognized such tort

liability in limited circumstances, *see, e. g. Knierim v. Izzo* 22 Ill.2d 73, 174 N.E.2d 157 (1961) and *Delta Finance Co. v. Ganachas*, 93 Ga.App. 297, 91 S.E.2d 383 (1956) plaintiff's claim would not seem to be within even these liberal views. In view of the distinctive prison environment and legitimate restrictions on inmate's rights, *Pell v. Procunier*, 417 U.S. 817,

**1210**

tion lies in the state courts, not in federal court. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973); *Meredith v. Arizona*, 523 F.2d 481, 482 (1975).

The recognition of the legitimacy of plaintiff's second and third claims must necessarily be based on a finding that plaintiff was unjustifiably injured by the failure to litigate the issues raised in the notice before the ICC. Assuming that due process would have compelled a hearing[3] before the ICC prior to a transfer or reclassification, the controlling fact remains, that is, plaintiff was not transferred or reclassified.

■ The selection of appropriate measures to insure prison security is a matter to be left within the discretion of prison officials. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Thus, the selection of a particular policy in response to an inmate's conduct is generally not reviewable by a federal court. *Meachum v. Fano*, 427 U.S. 215, 229, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). When read together, *Wolff* and *Meachum*, indicate the due process clause could require distinct procedural safeguards with respect to the same inmate conduct depending on the official response selected by prison officials to the conduct in question. For example, prison officials could institute both IAC and ICC proceedings against an inmate pursuant to the same "offense." Absent a reasonable expectation rooted in state law to the contrary, the inmate would have no legitimate claim that the procedural safeguards dictated by *Wolff*, as required in the IAC hearing must also be provided in the ICC hearing. *See Meachum, supra.* In the case at bar, the fact that plaintiff would have been

entitled to a hearing if the defendants had selected transfer as an appropriate action in response to his alleged conduct does not give plaintiff the right to litigate the nature of the conduct before the defendant may officially respond in a manner other than by transfer proceedings. The only "injury" the Court can conceive could result from the placement in the conduct file of the notice of the ICC hearing, is the adverse effects it might have on plaintiff's parole. However, plaintiff has no constitutional right to challenge the veracity of his prison file unless he affirmatively alleges (1) that certain information is in his file, (2) that such information is, in fact, false, and (3) that it has been relied on to a constitutionally significant degree. *Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979, No. 78–6213); *Franklin v. Shields*, 569 F.2d 800 (4th Cir. 1978) (en banc), *aff'd in part and rev'd in part* 569 F.2d 784 (4th Cir. 1977), *cert. denied*, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978). Plaintiff has not alleged that the notice of the ICC proceedings placed in his file is in any way "false," furthermore, even if such information placed in his file is false it would be speculative for the Court to determine at this point whether such information would be relied upon to a "constitutionally significant degree."

■ Assuming plaintiff is injured because of the possible adverse effects on his chances for parole, have the defendants violated the freedom of expression protected by the First Amendment? It is well settled that an inmate's rights, even those rights our society considers most basic, are justifiably limited upon lawful detention. *Wolff*,

---

822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), the Court believes the statements in *Swanson v. Swanson*, 121 Ill.App.2d 182, 257 N.E.2d 194 (1970), control: " '[we] do not believe that the distress which would be suffered by a person of ordinary sensitiveness from the facts related would be the severe mental disturbance [required to merit recovery]'."

**3.** Although there is no constitutional right to a pre-transfer or reclassification hearing absent a justifiable expectation of receiving such a hearing on the basis of tradition rooted in state law, *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532,

49 L.Ed.2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), it is arguable that Virginia has created such an expectation, *Cooper v. Riddle*, 540 F.2d 731, 732 (4th Cir. 1976); *Peterson v. Davis*, 421 F.Supp. 1220, 1223 (E.D.Va.1976). Thus for the purposes of this case the court will assume without deciding that plaintiff would have had a due process right to the hearing procedures established by the Virginia Department of Corrections pursuant to transfers or reclassification to a higher security status.

*supra* at 555, 94 S.Ct. 2963. In the context of the First Amendment the Supreme Court has stated,

> a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison [actions] that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).

■ This case does not involve the punishment of an inmate for the mere expression of his ideas, which the First Amendment clearly prohibits. *Sostre v. McGinnis*, 442 F.2d 178, 202 (2nd Cir. 1971). Here plaintiff distributed materials to at least eighty inmates which prison officials could find, as discussed above, hazardous to institutional security. Infringements upon First Amendment rights under circumstances which could precipitate a general riot within the prison population have been upheld as reasonable exercises of discretion. *Sweet v. Department of Corrections*, 529 F.2d 854, 863 (4th Cir. 1975). Addressing the issue of First Amendment infringements in an analogous situation the court in *Pittman v. Hutto*, 448 F.Supp. 61 (E.D.Va. 1978), *aff'd*, 594 F.2d 407 (4th Cir. 1979), found that to uphold the actions of prison officials "it need only be shown that their concerns are reasonable in order for their reasonable prohibition on First Amendment associational rights to prevail." *Pittman, supra* at 66. The Court finds that the defendant's actions are entirely reasonable in the present case and accordingly concludes that the defendant has not violated plaintiff's freedom of expression rights protected by the First Amendment.

■ Plaintiff's final claim is that the defendant's actions violate the Eighth Amendment's ban on cruel and unusual punishment. Punishment within the realm of the Eighth Amendment may be defined as an action or policy "deliberately administered for a penal or disciplinary purpose,

with the apparent authorization of high prison officials charged by the state with responsibility for care, control, and discipline of prisoners." *Johnson v. Glick*, 481 F.2d 1028, 1032 (2nd Cir. 1973). Defendant's actions cannot be placed within this definition, however, in view of the disposition of the claims discussed earlier. Thus, the Court is unable to label the defendant's actions as either cruel or unusual. Therefore, with respect to plaintiff's claim arising out of defendant's actions pursuant to plaintiff's involvement with the petition, the Court will grant defendant's motion for summary judgment.