869 F.2d 593
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Paul E. GULLET, Plaintiff-Appellant,
v.
John P. WILT, Warden, Brockbridge Correctional Facility;
Sgt. Corcoran; Janet Williams; John Smith Doe; Arthur
Crawmer; Arnold J. Hopkins, Commissioner, Division of
Corrections; Gary Hornbaker, Director of Operations
(Security Units); Marvin Robins, Executive Director (Inmate
Grievance Commission); Bishop Robinson, Secretary (Dept. of
Public Safety and Correctional Services); William Donald
Schaefer, Governor; A. Frank Carven, III, Special Asst.
(for Public Safety, Corrections and Juvenile Services),
Defendants-Appellees.
 No. 88-6797.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Jan. 13, 1989.
Decided: Feb. 21, 1989.
Rehearing and Rehearing In Banc Denied April 5, 1989.
 
 Paul E. Gullet, appellant pro se.
 Stephanie Judith Lane-Weber (Office of the Attorney General of Maryland), for appellees.
 Before JAMES DICKSON PHILLIPS, MURNAGHAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Paul Gullet, an inmate, appeals the order of the district court granting defendants' motion for summary judgment on Gullet's claims arising out of his transfer within the Maryland Division of Correction (DOC) to a more punitive institution. We affirm.
 
 
 2
 * While placed at the Maryland House of Correction, Gullet requested to be placed in protective custody because of threats he had received. Gullet's request was honored but shortly thereafter the classification team recommended his transfer to another institution because he did not qualify for further administrative segregation. Gullet was transferred to Brockbridge Correctional Facility (BBCF).[1] Within three months, the classification team at BBCF recommended Gullet's removal from the "warehouse" and placement in the "job bank." The classification team also noted that, based on Gullet's classification instrument, Gullet was not entitled to a change in his security status and "may be [a] security risk." Soon thereafter Gullet was transferred to ECI.
 
 
 3
 Gullet filed a complaint pursuant to 42 U.S.C. Sec. 1983, claiming that (1) his transfer to ECI was improper because prison officials failed to comply with departmental regulations; (2) he was being transferred in retaliation for his numerous institutional grievances; and (3) high-ranking state officials were liable because Gullet had informed them, by letter, of the events in his case.
 
 
 4
 The district court granted defendants' motion to dismiss or for summary judgment. The court held that (1) Gullet had no protectible liberty interest based on Paoli v. Lally, 812 F.2d 1489, cert. denied, 56 U.S.L.W. 3247 (U.S. Oct. 5, 1987) (No. 87-5202); (2) the record showed that Gullet was transferred "because he was a security risk"; and (3) those high-ranking officials named by Gullet were not liable under Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir.1977) and Slakan v. Porter, 737 F.2d 368 (4th Cir.1984), cert. denied, 470 U.S. 1035 (1985). We take up these holdings in turn.
 
 II
 
 5
 Prisoners have no protectible right against prison transfers under the Fourteenth Amendment absent some right or expectation rooted in state law. Meachum v. Fano, 427 U.S. 215 (1976); Montanye v. Haymes, 427 U.S. 236 (1976). Thus, Gullet's claim that he has a protected liberty interest must be evaluated in light of Maryland law. The controlling authority in this context is the Maryland Division of Correction Regulations (DCR's).
 
 
 6
 We do not write on a clean slate in regards to prison transfers under these regulations. In Paoli v. Lally, supra, this Court examined DCR's 100-1, 100-3, 100-14, and 100-16, and concluded that these regulations did not create a liberty interest. 812 F.2d at 1493. Gullet seeks to avoid the binding effect of Paoli by arguing that the regulations have been revised[2] and the new regulation creates a liberty interest. We acknowledge that the new regulation is different from those we examined in Paoli. We further agree that the new regulation appears to be more structured and objective. However, we find that DCR 100-1 does not substantively limit review by the warden or the Commissioner in any fashion and, most importantly, transfer of inmates is not mandatory, even where an inmate meets established criteria. These are the same factors we identified in Paoli, see 812 F.2d at 1493, and we adhere to our view that they preclude a finding that there is a protectible liberty interest under Maryland law.
 
 III
 
 7
 The First Amendment grants the rights to free speech and to seek redress of grievances. These rights, to a limited extent, exist in a prison setting. Turner v. Safley, 55 U.S.L.W. 4719 (U.S. June 1, 1987) (No. 85-1384); Johnson v. Avery, 393 U.S. 483 (1969). These rights are implicated by Gullet's claim that he is being transferred because prison officials are retaliating for Gullet's numerous institutional grievances.[3] See Wright v. Newsome, 795 F.2d 964 (11th Cir.1986); Bridges v. Russell, 757 F.2d 1155 (11th Cir.1985); Wolfel v. Bates, 707 F.2d 932 (6th Cir.1983); Lamb v. Hutto, 467 F.Supp. 562 (E.D.Va.1979). Thus, if Gullet has alleged, under oath, sufficient facts that show retaliation on the part of prison officials, then he has stated a claim that can withstand summary judgment. Viewing the record below in light most favorable to Gullet, see Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir.1980), we conclude that the record establishes that Gullet was transferred for a legitimate, nonretaliatory reason. In support of this conclusion, we note that Gullet was first transferred from MHC at his request. We also note that Gullet ended up at ECI, the institution to which he was originally scheduled to be transferred. Finally, we observe that the record contains letters from Gullet which indicate that BBCF was to be changed from a medium security institution to a minimum security institution, a change which justifies defendants' transfer of Gullet, a medium security prisoner. Taken together, we conclude that the above facts establish that Gullet was transferred for nonretaliatory reasons. Absent any definitive allegations from Gullet that suggest otherwise, we reject his speculative claims to the contrary.
 
 IV
 
 8
 In addition to the warden of BBCF and his classification team, Gullet seeks to establish liability on the part of Schaefer (the Governor of Maryland), Carven (the Governor's assistant), Hopkins (Commissioner of the DOC), Hornbaker (the Director of Operations of the DOC), Robbins (the Executive Director of the Inmate Grievance Commission) and Robinson (the Secretary of the Department of Public Safety and Correctional Services), because he mailed letters to each of them, describing his plight. This lone allegation is insufficient to meet the heavy burden in supervisory liability cases. See Slakan v. Porter, 737 F.2d 368, 373 (4th Cir.1984), cert. denied, 470 U.S. 1035 (1985). See also West v. Atkins, 815 F.2d 993, 996 (4th Cir.1987), rev'd on other grounds, 56 U.S.L.W. 4664 (U.S. June 20, 1988) (No. 87-5096). Thus, the above parties were properly dismissed from this cause.
 
 V
 
 9
 In conclusion, we hold that the district court properly ruled that Gullet has no protected liberty interest under Maryland law. We also agree that Gullet was transferred for a legitimate, nonretaliatory reason. Finally, we affirm the district court's order dismissing the above named high-ranking officials for a failure to state a claim of supervisory liability.
 
 
 10
 We dispense with oral argument because the facts and legal contentions are adequately presented in the record and oral argument would not aid the decisional process.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 Gullet was originally scheduled to be transferred to Eastern Correctional Institution (ECI), but, for some reason, was transferred to BBCF, instead
 
 
 [2]
 The regulations were revised on January 18, 1988; DCR's 100-3, 100-14 and 100-16 were rescinded as separate regulations and incorporated into a new DCR 100-1
 
 
 [3]
 This claim is, as noted, based on the First Amendment and is distinct from the claim that Gullet has a protected right against transfers without due process under the Fourteenth Amendment