THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

v.

C. L. HINES.

*Railroads—Negligence of—Personal Injuries—Damages—Anguish of Mind of Sentimental Character not Proper Element of—Railroads.*

It is the settled rule of law in this State that in actions for damages resulting from personal injuries, damages may be recovered for the pain and anguish of mind caused by the personal injury; yet it is not the law that anguish of mind, wholly sentimental, arising from a contemplation of a disfigurement of person, can be considered by the jury for the purpose of increasing the amount of the verdict.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Knox County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. WILLIAMS, LAWRENCE & BANCROFT and O. F. PRICE, for appellant.

Messrs. J. A. McKENZIE and GEORGE N. HAMILTON, for appellee.

MR. JUSTICE LACEY. On the 17th October, 1890, the appellee was engaged in hauling coal from the cars of the appellant to the pottery yard of the Pottery Co., in Monmouth, Illinois. While so engaged in loading the coal, the car on which he was at work was struck by the locomotive attached to the fast mail train of appellant, striking the car before appellee was able to jump off. The appellee was thrown up as high as the smoke stack, as he testified, and was seriously injured. The collision was caused by a misplaced switch, which ran the fast mail train into the coal car, with the result as stated. The evidence tended to show that appellee was carried home on a stretcher with a plaster of paris bandage on his leg and arm; that he was confined to bed six or seven weeks; that the doctor attended him off and on until 2d of April following; that he suffered pain during the time and has used a cane since he laid aside his crutches; that his knee occasionally gives way; that he can't grip together with his right hand and can not lift with it; that while he was earning $2 a day at the time, he had earned nothing since. It appeared also that appellee had had pneumonia for the last six or seven weeks and spent in bed two or three days; when he got out was not able to bear much weight on his feet, but he supposed the bones were knit. The appellee, since the injury, had sawed wood at home and split a little. The doctor who dressed the wounds, Marshall, testified that appellee had a scalp wound, a flesh wound near the elbow on left arm; a fracture of the right leg below the knee, a fracture of the large bone of the forearm, and a partial dislocation of the *ulna*. The opinion of this doctor was that appellee would not have the full use of his arm, same as though it had not been injured; that his leg was not in bad shape. It was a fraction of an inch short,

but this would not interfere with his ability to walk and work. His wrist would improve with time and exercise; the more exercise the more improvement; the fracture in the wrist appeared perfectly knitted, but would never be as useful as before the injury; but the doctor was of opinion that appellee's symptoms were due to the lack of exercise. It appears from the testimony of Dr. Halliday, who attended appellee, that the bone in the leg was united all right in six weeks, and that on November 27th, following the injury, he had an attack of pneumonia, and after that he had dropsy in right arm and in right leg, in face and left limb, and in April had influenza or grippe. His recovery was slow, he had so many back-sets. The doctor further testified appellee had headache the first day or so after the injury; he had headache in April, and that was characteristic of that disease, the grippe. It was the opinion of Dr. Cooper appellee would be able to resume his work in two years; in the meantime he could do light manual labor, and his injured leg was about half an inch shorter than the other. The testimony of the three other physicians sworn, was in substance that while appellee would never recover completely, that within a year and a half or two years, he would be able to resume his ordinary work.

The jury trying the case found a verdict in appellee's favor and assessed his damages at $5,000, upon which judgment was rendered for appellee.

The case is brought here and reversal asked on several errors assigned. It is not contended that there was not sufficient negligence chargeable to appellant in its servants leaving the switch open, to justify recovery and assessment of damages, or that there was any negligence on appellee's part to bar recovery. The only errors complained of are that the damages found by the jury were excessive, that the court allowed improper evidence to be given to the jury on the appellee's part, and that the court erred in refusing to give appellant's ninth and tenth offered instructions, and modified and gave as modified his second and fourth instructions.

The questions and answers complained of were propounded to and answered by the appellee, and are as follows:

"Q. Now, I will ask you in addition, you said you had suffered pain, great pain, etc., but in addition to what you have stated as a matter of damage, is there anything additional you have suffered? A. Yes, sir. Q. What is it? A. Many things make me feel bad when I look at my leg and think I have to be lame all my life; it makes me feel bad. Q. That makes you feel bad when you think of it?" This last question was objected to by appellant's counsel at the time, but the court overruled the objection and allowed it to be answered, to which the proper exception was taken. Then appellee answered: "Yes, sir, I carry the cane in my right hand all I can; I can use it some." The court, however, refused to allow the appellee to put an estimate in dollars and cents on this item of damages, but left it to the jury.

The instructions asked for and refused in connection with this evidence were the ninth and tenth. The tenth was in reference to this point, and to this effect: "He (appellee) is not entitled to compensation for the injury and pain to his feelings from the contemplation of himself as a crippled man, if such is the proof as to his condition, and the testimony of the plaintiff as to such mental pain, not resulting from the bodily injury, is not to be considered by you in determining the amount of the plaintiff's damages." The ninth refused, was substantially the same. These instructions were unobjectionable in other features. The court also modified appellant's second and fourth instructions and gave them as modified. The modification of each of those instructions allowed recovery for damages for the same class of mental suffering as testified to by appellee and refused them as offered, where they, as originally framed, excluded them. We are of the opinion the court erred in allowing the evidence complained of in modifying the appellant's second and fourth instructions, and in refusing the ninth and tenth refused instructions offered by the appellant. While in this State it is a well settled rule of law that damages may be allowed in cases like this for the pain, suffering and anguish of mind caused by the personal injury, yet we are not aware of any case and none has been shown us, holding that

anguish of mind, wholly sentimental, arising from a contemplation of a disfigurement of person, can be considered for the purpose of swelling such damages. The words, pain and anguish of mind, are used in a popular sense to denote such as may arise from any cause, and are not necessarily restricted to that arising from personal injury. But the legal meaning of such words found in the reports of decided cases in this State, as will plainly appear from their reading, confines such meaning of the words to such pain and anguish of mind as occur necessarily and spontaneously from any injury of or shock to the nerves of sensation, or such pain and anguish as remain during the continuance of the original and exciting cause and arising therefrom. But where the injury only comes about by reflection or contemplation, then in a legal sense it is not caused by the injury, but arises from and is produced by a combination of circumstances other than the injury. The amount and intensity of suffering of this character depends to a large degree on the character and feelings of the individual. While a small and insignificant disfigurement might cause intense disgust and mental suffering in the minds of one individual, the same defect would cause none at all in another. The law regards supposed injuries to sentimental feelings of this character as too remote and speculative to allow it as an element of damages in cases where no malice exists.

In cases for defamation of character and the like, where malice is the gist of the action, a wider scope is given for measurement of damages. We therefore think the court erred in the particulars above noted.

The appellant complained as to the amount of damages. We think there is good cause for such complaint. While the injuries were quite severe and doubtless appellee suffered much pain on account of them, we can not but think that the verdict was much too large. The appellee was not, in all probability, so injured but that in a few years, two or three at most, he could have resumed his ordinary occupation with substantially the same success as before. Five thousand dollars is a very large sum of money and very few

men in appellee's condition ever accumulate the half of that sum during their entire lives.    Verdicts in all cases ought to be reasonable, and based and assessed on principles of equity. If the injury had been wilfully inflicted, the case would have been quite different, and larger damages might be allowed with propriety.    We can not but think that the damages were unduly enhanced on account of the error of the court in the allowance of the evidence above referred to, and the modification of appellant's instructions, and in refusing others.

The judgment of the court below is therefore reversed and the cause remanded.

*Judgment reversed and remanded.*