City of Decatur, impleaded with City Electric Ry. Co., Central Union Telephone Co., and Citizens' Mutual Telephone Co. v. John Richard Hamilton, by his next friend.

1. CITIES AND VILLAGES—*Duty to Keep Streets in a Reasonably Safe Condition.*—It is the duty of a city to keep its streets in a reasonably safe condition so that people on foot and with teams may pass along the same without being exposed to dangers from obstructions, and for a neglect of such duty the city is liable for damages sustained.

2. SAME—*Knowledge of Obstructions Must be Shown.*—It must appear that the city had actual notice of the dangerous obstruction or that it had existed for such a length of time that notice might be inferred.

3. SAME—*Duty Imposed by Law as to Streets.*—A city has the control of its streets and the power to provide the means for exercising such control and the law imposes upon it the duty of exercising such authority in such a manner as to render its streets reasonably safe for persons using the same.

4. SAME—*Use of the Same by Electric Street Railways.*—Where a private corporation that has been granted the right to operate by electricity a street railway, uses an appliance that is a constant menace to the public in the use of a street, and the city has notice of the same, but neglects to abate it, the city is liable for injuries caused by such dangerous appliance to persons traveling upon the street.

5. SAME—*Use of Defective Wires by Telephone Companies.*—Where a city grants the right to a telephone company to use the streets, and such company in the operation of its lines uses rotten and rusted wires which frequently break and expose persons and horses passing along the street to danger, and the city with knowledge that such wire is being

used neglects to have its use discontinued, it will be liable for injuries caused by the same.

6. SAME—*Knowledge a Question of Fact.*—Where a city grants to a private corporation the right to use streets for an electric railway or a telephone, the dangerous condition of obstructions and the knowledge of the city are questions of fact for the jury.

7. SAME—*Notice to Officers of the City.*—Where a city establishes the office of " City Electrician " and defines his duties and lays down rules and regulations concerning electrical wiring and appliances, it delegates to such electrician as an officer of the city the authority to supervise the use of electrical appliances on the streets of the city.

8. INSTRUCTIONS—*Where There Are Joint Defendants.*—An instruction which authorizes a finding against all joint defendants, even though they believe only one of them guilty, is erroneous.

9. DAMAGES—*Mental Anguish, Resulting from the Contemplation of Maimed Hands, etc.*—Mere humiliation and mental anguish resulting from the contemplation of maimed hands and a disfigured face do not in a legal sense enter into an ascertainment of the pecuniary damages sustained as the result of negligence.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the November term, 1899. Reversed and remanded. Opinion filed June 12, 1900.

CLEMENT C. WALTERS, JAMES M. LEE and HUGH CREA, attorneys for appellant, contended that the city is not liable for injuries growing out of defects in overhead wires or other overhead appliances when not put up or operated by the corporation. Calumet Elec. St. Ry. Co. v. Grosse, 70 Ill. App. 381; Hewison v. City of New Haven, 91 Am. Dec. 718, 34 Conn. 136; Kennedy v. City of Lansing, 58 N. W. Rep. 470; Jones v. City of New Haven, 34 Conn. 1.

A city is not liable for injuries which result from a negligent enforcement or from the non-enforcement of its ordinances by its officers. Dillon on Municipal Corporations, Sec. 754; Wilcox v. City of Chicago, 107 Ill. 334; Blake v. City of Pontiac, 49 Ill. App. 543.

SHELLEY BROS. & GIBSON and I. A. BUCKINGHAM, attorneys for appellee.

Municipal corporations having the care and control of the public streets within their limits are obliged by the

laws of the State of Illinois to keep the same in repair for the passage of persons and property, and in the case of neglect, any person receiving injury in consequence of any obstruction or defect may have an action on the case to recover compensation for such injuries. Robbins v. Chicago, 4 Wall. 657 (71 U. S. 429); Damage by Corp., Harris, 1st Vol. p. 121, Sec. 105 and 107; City of Chicago v. Keefe, 114 Ill. 222.

And this although defect may not be open and notorious. City of LaSalle v. Porterfield, 138 Ill. 114.

The city is liable whether the obstruction be in the street or over the street. Grove v. City of Ft. Wayne, 45 Ind. 429; Elliott on Roads and Streets, 454–5; City of LaFayette v. Ashby, Ind., 34 N. E. Rep. 238; Day v. Milford, 5 Allen 98; Jones on Neg. of Munic. Corp. 193–4; Drake v. City of Lowell, 13 Metc. 292; Talbott v. City of Taunton, 5 N. E. Rep. 617; Bohen v. City of Waseca, Minn., 19 N. W. Rep. 730; City of Aurora v. Bitner, 100 Ind. 396; City of Huntington v. Breen, 77 Ind. 29; City of Springfield v. Le Claire, 49 Ill. 476; City of Chicago v. Seben, 165 Ill. 378; Cohen v. Mayor of New York, 21 N. E. Rep. 700; Farley v. Mayor, etc. (N. Y.), 46 N. E. Rep. 506.

The city is liable for injuries resulting from third person's negligence or accident when combined with city's default or negligence, if without city's default injury would not have been sustained. Graham v. City of Boston, 30 N. E. Rep. 170; Sides v. Portsmouth, 59 N. H. 24; Senhen v. City of Evansville, 40 N. E. Rep. 69; City of Chester v. W. U. Tel. Co. (Pa.), 25 Atl. Rep. 1135; Union St. Railway Co. et al. (City of Winfield) v. Stone (Kan.), 37 Pac. Rep. 1012; City of Peoria v. Simpson, 110 Ill. 301; Village of Carterville v. Cook, 129 Ill. 155; Pullman Palace Car Co. v. Laack, 143 Ill. 245 (261); Cohen v. Mayor of New York, 21 N. E. Rep. 700; City of Chicago v. Gallagher, 44 Ill. 295; City of Sterling v. Thomas, 60 Ill. 264.

The following cases maintain city's liability for the injuries growing out of defects in overhead wires, and this, whether put up or operated by the corporation or not.

Hayes v. Town of Hyde Park (Mass.), 12 L. R. A. 249; Bourget v. City of Cambridge (Mass.), 16 L. R. A. 605; Graham v. City of Boston, 30 N. E. Rep. 170; Mooney v. Luzerne Borough (Pa.), 40 L. R. A. 811.

It is immaterial whether the accident occurs on the street or upon private premises adjacent thereto. If the cause of the injury arises in the street, the city is liable. City of Omaha v. Richards (Neb.), 68 N. W. Rep. 528; Duffy v. City of Dubuque (Ia.), 18 N. W. Rep. 900.

The duty as announced in the case of Robbins v. City of Chicago, 4 Wall. 657, extends to children playing in the street. Graham v. City of Boston (Mass.), 30 N. E. Rep. 170; City of Chicago v. Keefe, 114 Ill. 222.

The following cases hold the city liable for injuries resulting from a defect in the construction of a street car line occupying its streets. Union St. Railway Co. et al. (City of Winfield) v. Stone (Kan.), 37 Pac. Rep. 1012; Cartesen v. Town of Strafford et al. (Conn.), 35 Atl. Rep. 276; City of Belleville v. Huffman, 74 Ill. App. 503; City of Peoria v. Gerber, 168 Ill. 320.

The question of negligence of the street car line for failure to maintain a guard wire over its trolley wire, a question for the jury. Block v. Milwaukee St. Railway Co. (Wis.), 61 N. W. Rep. 1101; N. Y. & N. J. Tel. Co. et al. (Electric Railway Co.) v. Bennett (N. J.), 42 Atl. Rep. 759.

Contributory negligence. A ten-year-old boy not chargeable with, as a matter of law, where he touched a wire hanging in the street. Haynes, Admr. v. Raleigh Gas Co. (N. C.), 26 L. R. A. 810.

An adult traveler on a highway who stoops to pick up and throw out of the way a loose telephone wire which is hanging so as to endanger travelers is not, as a matter of law, guilty of contributory negligence so as to defeat a recovery against the city. Bourget v. City of Cambridge (Mass.), 16 L. R. A. 605.

The following cases hold contributory negligence of child to be a question for the jury: Shook v. City of Cohoes (N. Y.), 15 N. E. Rep. 531; Sutton v. City of Snohomish

(Wash.), 93 Pac. Rep. 274; Saylor v. City of Montesano (Wash.), 39 Pac. Rep. 653; Talbott v. City of Taunton (Mass.), 5 N. E. Rep. 617; City of Chicago v. Keefe, 114 Ill. 222; City of Springfield v. LeClaire, 49 Ill. 476; City of Omaha v. Richards (Neb.), 68 N. W. Rep. 528; City of Sandwich v. Dolen, 133 Ill. 179; City of Chicago v. McLean, 133 Ill. 148.

Notice to an alderman is notice to the city. Dundas v. City of Lansing (Mich.), 42 N. W. Rep. 1011; Fuller v. City of Jackson (Mich.), 46 N. W. Rep. 722; Trapnell v. City of Red Oak Junction (Ia.), 39 N. W. Rep. 884; Owen v. City of Ft. Dodge (Ia.), 67 N. W. Rep. 281; Keyes v. City of Cedar Falls (Ia.), 78 N. W. Rep. 227; Noyes v. Town of Gardner (Mass.), 18 N. E. Rep. 423; City of Logansport v. Justice (Ind.), 39 Amer. Rep. 79; City of Columbus v. Strassner (Ind.), 25 N. E. Rep. 65; City of LaFayette v. Ashby (Ind.), 34 N. E. Rep. 238; City of Bonham v. Crider Tex.), 27 S. W. Rep. 419; Copper v. City of Mexico, 62 Mo. App. 385.

Mr. Justice Harker delivered the opinion of the court.

This is an appeal by the city of Decatur from a judgment of $15,000, recovered jointly against it, the City Electric Railway Co., and the City Mutual Telephone Co., in a suit for injuries done to the person of appellee by a broken telephone wire charged with electricity from the trolley wire of the railway company. A reversal is sought for the following reasons:

1. The court admitted improper evidence.

2. The jury were erroneously instructed.

3. There is not sufficient evidence to warrant a judgment against the city.

4. The damages awarded are excessive.

The evidence in the record shows that the City Electric Railway Company, under a franchise granted by appellant, operated a street railway within the city by electricity, and that the City Mutual Telephone Company, under a franchise granted by appellant, operated a telephone plant and

lines within the city. The railway company occupies the center of Condit street. Its trolley wire is supported by guy wires attached to poles on the north and south sides of the street. At the time of the accident to appellee the telephone company was using a line of wire on the north side of Condit street. Connected with this wire was a wire passing diagonally over the trolley wire to a telephone in a house on the south side of the street. There was no guard wire or other device to prevent overhead telephone or other wires, crossing the trolley wire, from falling upon it in case of breaking, nor was the diagonal wire mentioned insulated. Late in the afternoon of August 26, 1898, in a rain and wind storm which passed over Decatur, the telephone wire running along the north side of the street was broken somewhere between the poles to which it had been attached, and the ends fell to the ground from some trees in which the broken wire had lodged. On the next morning about ten o'clock, appellee, a boy but six years old, and a companion, one year older, found the end of the wire which was attached to the diagonal wire mentioned, playing upon the street. They began playing with it, and, while pulling it into an adjoining yard, evidently tore it from its attachment to the insulator on the pole, so that it dropped upon the trolley wire and became charged with a high voltage of electricity. As a result, appellee was terribly burned and disfigured, and his companion instantly killed.

The theory of the case against appellant was, that the city had knowledge of the defective manner in which the trolley wire and telephone wire were constructed, without insulation, guards or other protection; that it knew that the telephone wire was rusted and rotten, and liable to fall upon the highly charged trolley wire, thus rendering it dangerous to passengers on the street; and that with such knowledge it permitted such conditions to continue for a long time and until the injury complained of was received, when it was the duty of the city and within its powers to remedy the same.

We appreciate the gravity of the leading question involved.

Where a city grants to a private corporation the right to use upon its streets so dangerous an agency as electricity, what duty rests upon it, looking to the protection of the public? Where a person upon the street is injured by reason of the improper and negligent use of the agency, under what conditions will the city be liable jointly with the private corporation?

That it is the duty of the city to keep its streets in a reasonably safe condition, so that the people on foot and with teams may pass along the same without being exposed to dangers from any obstruction in the street, and that for a neglect of such duty the city is liable in damages for injuries caused by such obstruction, is familiar law. Frequent adjudications and holdings of courts of last resort in this State have made familiar the rule as to what knowledge of the obstruction must, by the proofs, be brought home to the city authorities before the city can be held liable. It must appear that the city has had actual notice of the dangerous obstruction, or it must have existed for such a length of time that notice may be inferred.

The public have a right to the use of the streets of a city for ordinary modes of travel, and the city has plenary power to make the exercise of that right reasonably safe. Upon such right in the public and such power in the city is based the liability of the municipality for injuries occasioned by dangerous obstructions. Having the control of its streets, and the power to provide the means for exercising such control, the law imposes upon the city the duty of exercising it, and of exercising it in such manner as to render it reasonably safe for persons using the streets. City of Chicago v. Keefe, 114 Ill. 222; City of LaSalle v. Porterfield, 138 Ill. 114; Robbins v. The City of Chicago, 4 Wallace, 657.

The rule of liability is not confined to cases of obstruction upon the surface of the street. An overhead awning, sign or other object, may be as dangerous as an obstruction upon the surface. The city has the same power to remove the one that it has the other. Upon principle, its duty with

reference to one is the same as it is with reference to the other, and consequently its liability for a neglect to perform the duty should be the same in one case as in the other.

While we are not prepared to hold, as has been held in some of the States, that a city is liable for injuries resulting from a defect in the construction of an electric street-car line, or for an improper adjustment of electric wire suspended over the street, we do hold as a matter of law that where a private corporation, to whom has been granted the right to operate by electricity a street railway, uses an appliance that is a constant menace to the public in the use of the street and the city has notice of the same, but neglects to abate it, the city is liable for injuries caused by such dangerous appliances to a person traveling upon the street. Likewise, if a telephone company in the operation of its lines uses rotten and rusted wires, which frequently break and expose persons and horses passing upon the street to danger, and the city with knowledge that such wire is being used neglects to have its use discontinued, the city would be in like manner liable. In such case the dangerous conditions and the city's knowledge of them are facts for the jury, of course.

Appellant contends that the admission in evidence of certain city ordinances was erroneous. Some of them are ordinances granting franchises to the electric railway and telephone companies, and regulating the use of their plants. One is an ordinance requiring the trolley wire to be protected by guards or other devices from overhead wires coming in contact with the same through breakage or sagging, etc.; another establishes the office of the city electrician, defines the duties of such officer, and lays down rules and regulations concerning electrical wiring and appliances. The first mentioned were certainly admissible against the electric railway company and the telephone company, defendants with appellants. By the last mentioned ordinance appellant created a department, and placed at its head an officer denominated city electrician. It thereby delegated to such officer the authority to supervise the use

of electrical apparatuses on the streets of the city. Notice to such officer of a dangerous appliance or condition would be notice to the city, and for that reason the ordinance was admissible. No error was committed in the admission of the ordinances in evidence.

By the second instruction for the plaintiff the court told the jury:

"The plaintiff may recover against either one or against any two, or all of the defendants, if you believe from the evidence that the defendant, or either one of them, or any two them, were guilty of negligence as charged."

Under this instruction the jury was authorized to find against all the defendants, even though they believed only one was guilty. It authorized a finding against the city if the evidence showed that a dangerous appliance of the railway company or the telephone company caused the injury, independent of whether the city had notice of the same. It was error to give it.

The third instruction for the plaintiff is erroneous for the same reason.

In the eighth instruction for the plaintiff the court told the jury:

"The elements of damage which the jury are entitled to take into account, consist of all the effects of the injury complained of, consisting of personal inconvenience, the sickness which the plaintiff endured, and the loss of time, all bodily and mental suffering, impairment of capacity to earn money, the pecuniary expenses, and the disfigurement or permanent annoyance which is liable to be caused by the deformity resulting from injury; and in considering what would be a just sum in compensation for the sufferings or injury, the jury are not only at liberty to consider the bodily pain, but the mental suffering, anxiety, suspense and fright may be treated as elements of injury, for which damages, by way of compensation, should be allowed; and as these last mentioned elements of damages are, in their very nature, not susceptible of any precise or exact computation, the determination of the amount is committed to the judgment and good sense of the jury."

Clearly, this instruction allowed the jury to infer that their verdict might include damages for " mental suffer-

ing," resulting from brooding over his permanent disfigurement. The reflections of a young person that he must go through life with a face burned and scarred, and with some of the fingers upon his hands grown together, and others fastened to the palm, must necessarily bring great "mental suffering." The consciousness that his marred personal appearance will throughout life excite the constant inquiry of the curious must, especially to one of a sensitive nature, be a permanent annoyance and the source of great mental anguish. But in this State such "mental suffering" is not a proper element of damages. It is the mental suffering which arises necessarily and spontaneously from an injury or shock to the nerves of sensation, or from such pain and anguish as remain during the continuation of the original and exciting cause, that is a proper element of damages. Mere humiliation and mental anguish resulting from the contemplation of maimed hands and a disfigured face do not, in a legal sense, enter into an ascertainment of the pecuniary damages one has sustained as the result of negligence. I. C. R. R. Co. v. Cole, 165 Ill. 334; C., B. & Q. R. R. Co. v. Hines, 45 Ill. App. 299; Chicago and Grand Trunk Ry. Co. v. Spurney, 69 Ill. App. 549.

For error in giving the above mentioned instructions the judgment will be reversed.

As the cause will be remanded for another trial we do not care to express views upon the weight of the evidence, or upon the question of the sufficiency of the notice which the city had of the dangerous conditions complained of, except to say that there was evidence tending to show negligence and notice. Judgment reversed and the cause remanded.