SHARON ROBBINS *et al.*, Plaintiffs-Appellants, v. MARTIN KASS *et al.*, Defendants-Appellees.

Second District   No. 2—87—0221

Opinion filed December 9, 1987.

Anesi, Ozmon & Lewin & Associates, Ltd., of Chicago (Curt N. Rodin, of counsel), for appellant.

Kathryn A. Spalding and D. Kendall Griffith, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and James H. Pluymert, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Waukegan (Nancy G. Lischer, of counsel), for appellee Highland Park Hospital.

James A. Christman and Ruth E. VanDemark, both of Wildman, Harrold, Allen & Dixon, of Chicago (Steven L. Larson, of counsel), for other appellees.

JUSTICE DUNN delivered the opinion of the court:

In their fourth amended complaint, plaintiffs Sharon Robbins and Joel Robbins, individually and as special administrator of the estate of Baby Robbins, sought damages from defendants, Highland Park Hospital, Dr. Kass and Dr. Loeff, for the negligent infliction of emotional distress and the wrongful death of their stillborn baby. Highland Park Hospital moved for summary judgment and was subsequently joined by Drs. Kass and Loeff. After a hearing on the summary judgment motions, the trial court ruled in favor of defendants on all counts. On appeal, plaintiffs contend the trial court erred in applying the zone-of-physical-danger rule adopted in *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546.

The pleadings and depositions filed in support of defendants' summary judgment motions reveal the following. In July 1983, Sharon

Robbins experienced bleeding problems associated with her pregnancy. Sharon contacted Dr. Loeff and remained under his care throughout the pregnancy. When the bleeding persisted, Sharon was advised by Dr. Loeff that the chances of the baby's surviving were slim. On September 10, Sharon felt contractions and proceeded with her husband, Joel, and a friend, Pam Spritz, to Highland Park Hospital. At the hospital, Dr. Loeff's partner, Dr. Kass, visited with the Robbinses for approximately 10 minutes. He discussed transferring Sharon to a hospital equipped with a neonatal center in order to increase the chances of the baby's survival. A short time later, Dr. Kass advised the Robbinses the neonatal units of the other hospitals would not accept them because the pregnancy was not far enough along. Thereafter, a nurse checked on Sharon and then left the room. Some 20 minutes later, Sharon felt the baby coming. Joel went out into the hallway on several occasions in an effort to obtain assistance. No one responded, and the stillbirth occurred in the presence of Joel and Pam Spritz. Five to ten minutes later, Dr. Parsavand arrived, delivered the placenta, and removed the stillborn baby from between Sharon's legs.

Dr. Kass had left the hospital before the delivery. Some time after the delivery Dr. Loeff arrived. Dr. Loeff told the Robbinses they should have had assistance, although it probably would not have made a difference. Sharon remained in the hospital for three days. Other than the loss of blood, she suffered no other physical problems after the birth of the baby. Sharon did not seek medical treatment for any resulting emotional pain or distress. However, she constantly thought about the incident, she cried on numerous occasions as a result of the incident, and her migraine headaches increased in frequency from one every three or four months to one every month. Joel added that Sharon experienced sleeplessness and became upset when she saw pregnant women. Joel experienced bouts of crying and aggravation of a stomach disorder following the incident. Joel explained the incident affected his "state of mind" more than his physical well-being.

Plaintiffs' expert, Dr. John Masterson, stated in deposition that the nursing staff deviated from the normal standard of care by failing to provide indicated care to Sharon Robbins during her stay in the maternity ward and by failing to monitor or respond to requests for assistance. Dr. Masterson was critical of Dr. Kass' departure from the hospital on account of the possibility that emergency surgery might have been required, and Dr. Kass' failure to see that a blood transfusion was implemented. Dr. Masterson also criticized Dr. Loeff for not being present and for failing to provide an adequate backup doctor. Despite these deviations, Masterson admitted the baby would not

have survived even if a physician had been present and proper care had been administered. Masterson added that no physical harm resulted to Sharon as a result of the conduct of the hospital and treating physicians.

In its written order ruling in favor of defendants, the trial court specifically found the physical manifestations suffered by Sharon and Joel Robbins were insufficient to satisfy the physical injury or illness requirement of the zone-of-physical-danger rule adopted in *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546.

■■ Plaintiffs first contend the trial court erred in applying *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, because the plaintiffs were not bystanders, as was the plaintiff in *Rickey*; rather, they were direct victims of the negligent acts. This identical argument was raised and rejected in *Courtney v. St. Joseph Hospital* (1986), 149 Ill. App. 3d 397. The court stated:

> "Notwithstanding the supreme court's reference to the plaintiff in *Rickey* as a 'bystander,' it has been correctly observed that 'the nature of the zone-of-physical-danger rule is such that it allows recovery only to direct victims of negligence, because recovery must be predicated on a reasonable fear for one's own safety.' [Citation.] Under the zone-of-physical-danger standard, the proper focus is on whether plaintiff was in proximity to the danger, not whether he witnessed an accident to a third person. [Citation.] Accordingly, we reject plaintiff's argument that the requirements for recovery under *Rickey* do not apply to direct victims of negligence." (*Courtney*, 149 Ill. App. 3d at 402-03.)

As recognized by the majority in *Lewis v. Westinghouse Electric Corp.* (1985), 139 Ill. App. 3d 634, 637-38, there is no longer a need to distinguish between whether a plaintiff is a direct victim or a bystander.

In addition to the appellate court decisions mentioned, the supreme court's recent decision in *Siemieniec v. Lutheran General Hospital* (1987), 117 Ill. 2d 230, seems to foreclose plaintiffs' assertion. The Siemieniecs sought, *inter alia*, damages for the emotional distress they suffered as a consequence of the "wrongful birth" of their hemophilic son. A misdiagnosis by the Siemieniecs' doctor regarding their chances of bearing a hemophilic child was the basis for the claims advanced. In resolving the Siemieniecs' claim for damages for their emotional distress, the supreme court addressed the issue in terms of the right of a "plaintiff" to recover for negligently inflicted emotional distress. After commenting that it had recently reexamined its position with regard to recovery for emotional distress and there-

after setting out the rule adopted in *Rickey*, the court stated:

> "Thus, under the holding of *Rickey*, before a plaintiff can recover for negligently caused emotional distress, he must have, himself, been endangered by the negligence, and he must have suffered physical injury or illness as a result of the emotional distress caused by the defendant's negligence." (*Siemieniec*, 117 Ill. 2d at 261.)

Although not specifically mentioned, it is evident the supreme court contemplated application of the zone-of-physical-danger rule to all claims involving negligently inflicted emotional distress, for the court later stated:

> "In *Rickey*, this court thoroughly analyzed the law in relation to negligently inflicted emotional distress. After doing so, this court changed its previous adherence to the impact rule and adopted what it perceived as the standard applied in a majority of the jurisdictions where the question has been examined. [Citation.] *Rickey* thus brought the law of this State on the issue in question into conformity with the majority position." (*Siemieniec*, 117 Ill. 2d at 262.)

Indeed, the Siemieniecs, like the Robbinses, were not bystanders; rather, they were actual or direct victims of the alleged negligence. It is noteworthy that Justice Simon dissented in *Siemieniec* in part on grounds the *Rickey* rule should not be applied to actual victims. *Siemieniec*, 117 Ill. 2d at 269-71 (Simon, J., dissenting).

In light of *Siemieniec* and the aforementioned decisions of the appellate court, the zone-of-physical-danger rule was correctly relied on by the trial court as the applicable rule of law. We note finally that requests to establish a medical malpractice exception to the *Rickey* rule have been uniformly rejected. See *Johnston v. St. Anne's Hospital West, Inc.* (1986), 146 Ill. App. 3d 763; *Gihring v. Butcher* (1985), 138 Ill. App. 3d 976.

Plaintiffs next assert the "physical consequences" requirement of the zone-of-physical-danger rule adopted in *Rickey* is arbitrary and should be eliminated. Plaintiffs are referring to the requirement that the aggrieved party show a resulting physical injury or illness in order to recover for the negligent infliction of emotional distress. (*Siemieniec*, 117 Ill. 2d at 261; *Rickey*, 98 Ill. 2d at 555.) It is plaintiffs' contention that in circumstances such as those present here, recovery should be allowed for emotional distress without requiring the presence of resulting physical consequences. Plaintiffs request this court to carve out an exception to the *Rickey* rule for cases, such as this one, where the genuineness of the emotional harm

is beyond question. Relying on two out-of-State cases (*Taylor v. Baptist Medical Center, Inc.* (Ala. 1981), 400 So. 2d 369, and *Molien v. Kaiser Foundation Hospitals* (1980), 27 Cal. 3d 916, 616 P.2d 813, 167 Cal. Rptr. 831), plaintiffs urge this court to "open its eyes" to the particular circumstances of this case and allow recovery.

We, of course, must reject plaintiffs' invitation, regardless of our views on the matter, because it is axiomatic that the appellate court lacks the authority to overrule or modify decisions of the supreme court. (*Rickey*, 98 Ill. 2d at 551-52; see *Courtney*, 149 Ill. App. 3d at 400.) The physical consequences requirement was clearly and unequivocally established by our supreme court in *Rickey* and reiterated in the supreme court's recent decision in *Siemieniec*. We are duty bound to follow controlling decisions of the supreme court and do so here. Abandonment of the physical consequences requirement is a matter reserved for the supreme court.

■■ ■ Alternatively, plaintiffs contend the trial court erred in finding as a matter of law that plaintiffs' physical manifestations did not constitute sufficient physical consequences of emotional distress to warrant recovery. To be entitled to recovery for the negligent infliction of emotional distress, the aggrieved party must establish: (1) that he or she was endangered by the defendant's negligence; and (2) physical injury or illness as a result of the emotional distress caused by the defendant's negligence. (*Siemieniec*, 117 Ill. 2d at 261.) Plaintiffs' argument presupposes compliance with the first prong, *i.e.*, that they were in a zone of physical danger (high risk of physical impact) and they had reasonable fears for their own safety as a result of the defendants' negligence. (*Rickey*, 98 Ill. 2d at 555.) This assumption by plaintiffs is clearly ill-founded in Joel Robbins' case. Certainly, Joel Robbins was at no time in any danger of physical injury and had no reason to fear for his own safety on account of the alleged negligence of the hospital and the treating physicians. (See *Johnston*, 146 Ill. App. 3d 763; *Gihring*, 138 Ill. App. 3d 976.) Absent presence in a zone of physical danger, recovery for the negligent infliction of emotional distress is precluded. We therefore need not address the argument raised by plaintiffs as it relates to Joel Robbins.

■■ As to whether Sharon Robbins was endangered by the defendants' negligence, we assume without deciding that she was, because, regardless, Sharon in our opinion is not entitled to recover for the negligent infliction of emotional distress because the physical manifestations of her emotional distress were insufficient to warrant recovery. The complaint alleged that Sharon suffered severe and permanent injuries and also great mental pain and suffering. The deposi-

tions of Sharon and Joel Robbins revealed that Sharon's physical manifestations were crying, sleeplessness, increased migraine headaches and becoming upset when she viewed pregnant women. Sharon did not seek or receive medical attention. The trial court found these manifestations were insufficient to satisfy the physical consequences requirement established in *Rickey*. We agree.

Illinois case law interpreting or discussing the physical injury or illness requirement of negligent infliction of emotional distress has not been called to our attention by the parties and has not been uncovered by our research. The cases relied on by the parties do not directly address the question at hand. In *Rickey*, the court merely set out the allegation of the complaint relating to physical consequences without further comment. (*Rickey*, 98 Ill. 2d at 549-50.) In *Lewis*, a woman trapped in an elevator for 40 minutes suffered, *inter alia*, an aggravation of a preexisting condition. In finding that the woman had failed to state a cause of action for the negligent infliction of emotional distress, the court noted that the defendant's conduct must cause distress to a person of ordinary sensibilities. The court had previously determined that the woman was not of ordinary sensibilities because of her preexisting heart condition. The court's comment, however, was directed toward the first prong of *Rickey*, *i.e.*, whether the plaintiff had a reasonable fear for her own safety, rather than the extent of the physical consequences required by *Rickey's* second prong. (*Lewis*, 139 Ill. App. 3d at 637.) In *Knierim v. Izzo* (1961), 22 Ill. 2d 73, the supreme court held for the first time that the intentional infliction of emotional distress stated an independent cause of action in Illinois. To recover, the plaintiff is required to show "severe emotional disturbance." (*Knierim*, 22 Ill. 2d at 85-86.) In *Swanson v. Swanson* (1970), 121 Ill. App. 2d 182, the plaintiff suffered nervousness, many sleepless nights and the fear of nightmares as a consequence of defendant's intentional conduct. Plaintiff did not receive or seek medical aid for his condition. The court held these consequences did not establish a severe emotional disturbance as required by *Knierim*. (*Swanson*, 121 Ill. App. 2d at 185-86.) Finally, in *Horak v. Biris* (1985), 130 Ill. App. 3d 140, this court found a cause of action existed for social worker malpractice, but only briefly, and without any relevance to the case at bar, discussed damages. *Horak*, 130 Ill. App. 3d at 147.

Although none of these cases address the precise question at hand, *Swanson* does provide some guidance. If nervousness, sleeplessness and the fear of nightmares are insufficient to show a "severe emotional disturbance" in the intentional infliction .of emotional dis-

tress context, it would not seem crying, sleeplessness, increased migraine headaches and upset feelings would suffice in a case where the defendant acted negligently, rather than intentionally. Although the standards are different, the physical illness or injury requirement indicates a desire to permit compensation only in cases involving severe or serious emotional distress. The physical manifestations suffered by Sharon Robbins reveal that she does not fit into this category of plaintiffs.

We find support for our conclusion in *Cosgrove v. Beymer* (D. Del. 1965), 244 F. Supp. 824. In *Cosgrove*, a plaintiff within the zone of physical danger of an automobile accident was denied compensation for the occasional nightmares, the nervousness she experienced when driving, and the fact she became upset when discussing the accident. The court concluded plaintiff could not recover damages because of the lack of bodily injury or sickness following the emotional disturbance. The court pointed out the rule denying recovery for emotional disturbance only included such disturbances as fright, nervous shock, and grief. The court found recovery for these disturbances was precluded even though accompanied by physical manifestations such as dizziness, mild headaches, nervousness, and the like. *Cosgrove*, 244 F. Supp. at 826.

In the present case, the physical manifestations suffered by Sharon Robbins are simply not that serious or unusual. No medical treatment was sought or received. The sleeplessness, crying, increased migraine headaches and upset feelings arguably would have resulted regardless of whether or not medical personnel were present at the time of the stillbirth. Indeed, Sharon's physical and emotional reaction would seem typical of any parent involved in the delivery of a stillborn baby. In sum, the physical consequences sustained by Sharon Robbins do not establish sufficient physical injury or illness to warrant recovery for the negligent infliction of emotional distress.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HOPF and WOODWARD, JJ., concur.