JAMES J. ALLEN *et al.*, Plaintiffs-Appellees, v. OTIS ELEVATOR COMPANY, Defendant-Appellant (John Hancock Mutual Life Insurance Company, Defendant).

First District (1st Division)   No. 1—88—2630

Opinion filed September 28, 1990.—Rehearing denied December 19, 1990.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Perry C. Rocco, and Christine L. Olson, of counsel), for appellant.

Cantwell & Balonick, of Chicago (Peter A. Cantwell and Stephen F. Boulton, of counsel), for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Otis Elevator Company (defendant) appeals from a $5,000 jury award to each of the plaintiffs James Allen, his wife, Helen, and their daughter, Mary, in their action alleging negligent infliction of emotional distress. Defendant requests that a judgment notwithstanding the verdict be entered on the ground that plaintiffs have failed to prove a negligent infliction of emotional distress cause of action as a matter of law. Defendant alternatively requests that a new trial be granted due to prejudicial rulings on the submission of jury instructions and the admission of certain testimony, or that a new trial be granted on the issue of damages alone on the ground that the jury award is excessive and against the manifest weight of the evidence. We need not address the issue raised on defendant's new trial request because we find a judgment notwithstanding the verdict must be entered.

The evidence adduced at trial reveals the following. At approximately 11 p.m. on January 22, 1977, plaintiffs, who were heavily clothed, entered the John Hancock Center in Chicago, Illinois, where they boarded an elevator with 15 or 20 other passengers destined for the 95th and 96th floors. Prior to reaching the 95th floor, the elevator "stopped and dropped" "four to six to eight feet," causing James to be thrown against fellow passengers and Helen and Mary to be

thrown against the walls of the elevator. When the elevator came to a halt, James pushed the elevator's emergency alarm bell button. A voice answered and informed the passengers that their needs would be attended to.

Plaintiffs described the conditions in the elevator at the time. Air circulation in the car was poor because of a closed circulation fan. The passengers could not move or sit down due to the limited amount of space in the elevator. The elevator became so hot that people were soaked in perspiration and began removing their clothing.

After approximately 15 minutes without any outside contact, James rang the alarm bell again. A voice replied that "someone was coming over from Water Tower" to free the passengers. James requested that the person on the intercom keep in contact with them, but a long period of time lapsed without any outside contact. In response to an "S.O.S." signal that James rang out on the alarm bell, an impatient voice informed the passengers as to the futility of ringing the alarm bell. Outside communication was thereafter cut off. The passengers unsuccessfully attempted to open the escape hatch on top of the elevator and the doors of the elevator. A gun that one passenger carried in a holster was exposed during these actions, causing the plaintiffs to fear that the man might panic and start shooting.

William Valleau, the second mechanic for the Hancock building, and Jerome Camp, a Hancock building engineer, located the stalled elevator and rescued the passengers at approximately 1 a.m. by opening the escape hatch and lowering a ladder into the elevator. The passengers climbed onto the top of the elevator and slid along the elevator's roof to an open hallway door leading to one of the building's floors. The passengers could observe the black "abyss" of the empty adjoining elevator shaft. Valleau subsequently replaced an "open" F4C ³⁄₄ fuse and returned the elevator to service.

Witnesses explained the following regarding malfunctioned elevators. When incidents of elevator malfunction occur, a time ticket is prepared by the repair mechanic and a report is submitted to him. If a mechanic is needed on weekends, the "first" mechanic is contacted, and if he does not respond, the "second" mechanic is notified. The elevator car could not actually drop. When the fuse "opened," power to the brake of the elevator would have been lost, but the elevator car "would have had a controlled stop, regenerative power through the circuit," and the elevator would have stopped approximately 30 to 40 seconds, or three to four floors, later following

the opening of the fuse.

Plaintiffs described the injuries they incurred as a result of the incident. When James walks into an elevator he gets excited and a "little clammy," "wondering if [the] elevator is going to go up or *** down." He has exited elevators prior to their departure where he believes malfunctions are likely, such as when there is a delay in the closing of the elevator doors. James admitted that he has never received any medical treatment as a result of the incident, including treatment from a psychiatrist or counselor. He has not been prevented from attending work as a result of the incident. Subsequent to the elevator incident, he and his wife purchased a condominium on the fifth floor of a building and used the elevator regularly.

Helen was unable to sleep the night of the incident. She had never feared the use of elevators prior to the incident, but now sometimes exits a crowded elevator. Her palms now start to get moist and she has a feeling of distress when she is in an elevator. She exits an elevator if the elevator doors do not immediately close correctly or if she feels the elevator is not operating properly. On occasion, she has exited the elevator in her building and has instead walked up to her residence.

Helen dislikes flying in airplanes, but admitted that she did not care to fly before the incident. She admitted that she has not received medical treatment or psychological counselling. She observed no change in James as a result of the incident, but her daughter, Mary, is "extremely nervous" "[w]hen she gets on a plane."

Mary now has a fear of flying, fear of crowds, and fear of heights. She avoids the use of elevators whenever possible, especially when an elevator is crowded or malfunctioning. Mary admitted she took elevators at work after the incident. She is afraid to travel in an airplane because "[i]t reminds [her] of when [she] was in the elevator, basically of being closed in and having people around [her], close by, being up high." While on airplanes, her stomach churns, her palms become sweaty and she becomes very nervous. Immediately following the incident, she cried every time she was on an airplane and avoided flying whenever possible. She is unable to enjoy trips or vacations which require air travel and has avoided using airplanes as a means of transportation.

Crowds cause Mary to feel frightened and her eating and sleeping habits and her choice of housing and employment have been affected. A factor in her job selection in California was that the office was on a first floor, and she will not live in a building requiring the use of an elevator. Mary admitted that she has not received any med-

ical or psychological treatment as a consequence of the elevator incident, nor has the incident prevented her from attending work.

Addressing the defendant's contention on appeal that a judgment notwithstanding the verdict should have been entered in its favor, defendant contends that plaintiffs have failed to meet the legal predicate to recovery for injuries incurred as a result of a negligently inflicted emotional distress. The legal standard applicable to this issue and its requirements are the subject of the dispute on appeal, as well as the subject of much confusion among Illinois courts.

■ Historically, Illinois courts adhered to the rule announced in *Braun v. Craven* (1898), 175 Ill. 401, 51 N.E. 657, to limit recovery for negligently inflicted emotional distress to situations where the plaintiff suffered a contemporaneous physical impact as the result of defendant's negligence. (*E.g., Cutright v. City National Bank* (1980), 88 Ill. App. 3d 742, 410 N.E.2d 1142; *Carlinville National Bank v. Rhoads* (1978), 63 Ill. App. 3d 502, 380 N.E.2d 63; *Owens v. Chicago Telephone Co.* (1910), 159 Ill. App. 80.) In *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1, the Illinois Supreme Court adopted a standard enabling a victim of a negligent act or omission who had not suffered a contemporaneous physical impact to plead a cause of action for negligent infliction of emotional distress. This standard, known as the zone-of-physical-danger rule, allows the plaintiff to recover for physical injury or illness as a result of the emotional distress caused by the defendant's negligence when the plaintiff is in such proximity to the impact to have reasonable fear for his own safety. *Rickey*, 98 Ill. 2d at 555, 457 N.E.2d at 5.

Since *Rickey*, courts have disputed whether the zone-of-physical-danger rule has replaced the impact rule as the standard to be applied in all negligent infliction of emotional distress causes of action, or whether the rule acts conjunctively with the impact rule to be applied solely in bystander situations. (Compare *Siemieniec v. Lutheran General Hospital* (1985), 134 Ill. App. 3d 823, 480 N.E.2d 1227, *aff'd in part, rev'd in part* (1987), 117 Ill. 2d 230, 512 N.E.2d 691; *Corgan v. Muehling* (1988), 167 Ill. App. 3d 1093, 522 N.E.2d 153, *appeal allowed* (1988), 122 Ill. 2d 572, 530 N.E.2d 242; *McAdams v. Eli Lilly & Co.* (N.D. Ill. 1986), 638 F. Supp. 1173, 1178 (courts finding zone-of-physical-danger rule to apply only to bystander situations), with *Hammond v. Lane* (1987), 162 Ill. App. 3d 17, 515 N.E.2d 828; *Lewis v. Westinghouse Electric Corp.* (1985), 139 Ill. App. 3d 634, 487 N.E.2d 1071; *Robbins v. Kass* (1987), 163 Ill. App. 3d 927, 516 N.E.2d 1023; *Goldberg v. Ruskin* (1984), 128 Ill. App. 3d 1029, 471 N.E.2d 530, *aff'd in part* (1986), 113 Ill. 2d 482, 499 N.E.2d 406

(courts finding *Rickey* to have abolished the impact rule); see also Note, *Rickey v. Chicago Transit Authority: Consistent Limitation on Recovery for Negligent Infliction of Emotional Distress in Illinois,* 17 J. Mar. L. Rev. 563 (1984)) (interpreting *Rickey* as allowing a direct victim to recover emotional distress under both the impact rule and the zone-of-physical-danger rule).[1]

The controversy in Illinois appellate courts has arisen due to the absence in the *Rickey* opinion of any indication as to whether the court was adopting a conjunctive test or abolishing the impact rule. *Rickey*'s language suggests that the court was substituting a test to be applied solely in bystander situations. Throughout the opinion, the court refers to the bystander and limits its discussion to the bystander. The court framed the issue before it as "whether a bystander *** may recover damages for emotional distress," and it announced its new standard as one "which has been adopted in the majority of jurisdictions where *this question of recovery by a bystander* for emotional distress has been examined." (Emphasis added.) *Rickey*, 98 Ill. 2d at 549, 555, 457 N.E.2d at 2, 5.

■ The above language, together with the historical context of the case, leads us to conclude that the impact rule remains a viable test in Illinois. Before the announcement of the impact rule in *Braun*, Illinois courts had long restricted recovery for emotional distress or emotional pain in simple negligence cases to that traceable to, or directly flowing from, a bodily injury immediately inflicted by the defendant's negligence. (*Indianapolis & St. Louis R.R. Co. v. Stables* (1872), 62 Ill. 313; *Hannibal & St. Joseph R.R. Co. v. Martin* (1884), 111 Ill. 219; *City of Chicago v. McLean* (1890), 133 Ill. 148, 24 N.E. 527; *Chicago, Burlington & Quincy R.R. Co. v. Hines* (1892), 45 Ill. App. 299.) The *Braun* court followed this restrictive view of recovery for negligently inflicted emotional distress when it limited recovery for a physical injury resulting from mental anguish or fright due to the defendant's verbal assault upon the plaintiff. The

---

[1]Defendant argues that the supreme court's recent decision in *Siemieniec v. Lutheran Hospital* (1987), 117 Ill. 2d 230, 512 N.E.2d 691, establishes that *Rickey* abandoned the impact rule in all negligent infliction of emotional distress cases. The opinion, however, has no express language to this effect, and its language suggests that the court viewed the case before it as a bystander situation. Moreover, the court did not refute the appellate court's position in that case that *Rickey* is a "limited exception" to the impact rule. See *Siemieniec*, 134 Ill. App. 3d at 830, 480 N.E.2d at 1232; see also *Siemieniec*, 117 Ill. 2d at 268, 512 N.E.2d at 711 (Simon, J., specially concurring) (disputing *Rickey*'s application on the ground that the plaintiffs were actual victims not bystanders); *Corgan v. Muehling* (1988), 167 Ill. App. 3d 1093, 522 N.E.2d 153.

court focused on a proximate cause analysis and concluded that such injuries were unforeseeable absent a contemporaneous physical impact. *Braun*, 175 Ill. 401, 51 N.E. 657.

The *Rickey* decision followed years of adherence by Illinois courts to *Braun*, which had resulted in the elimination of claims by persons who were direct victims of negligence but did not suffer an impact and by bystanders who witnessed the consequences of defendant's negligence to another. (*E.g., McCullough v. Orcutt* (1957), 14 Ill. App. 2d 513, 145 N.E.2d 109 (recovery denied for miscarriage suffered when witnessing husband's injuries sustained in an automobile accident); *Rosenberg v. Packerland Packing Co.* (1977), 55 Ill. App. 3d 959, 370 N.E.2d 1235 (recovery denied to driver of car who suffered mental injury when a truck driver drove within two feet of vehicle for a long span of time at speeds up to 80 miles per hour).) Because of the harsh consequences of the rule, the rule was subject to much criticism among commentators. See Reidy, *Negligent Infliction of Emotion Distress in Illinois: Living in the Past, Suffering in the Present*, 30 De Paul L. Rev. 295 (1980).

When viewing *Rickey* in this historical context, it is logical to conclude that, by prefacing its holding on the "bystander" situation, the court intended to expand a defendant's duty resulting from *Braun*'s proximate cause analysis to injuries suffered by bystanders in specified circumstances. Thus, where bystanders are involved, the zone-of-physical-danger rule is substituted for the impact rule, whereas, where a plaintiff is a direct victim of a negligent act—one personally involved in the mishap—the impact rule remains.[2]

The strained results produced by courts applying the zone-of-physical-danger test to direct victims render support for our conclusion that the test was intended to apply solely to bystander situations. As many courts have realized, the rule's proximity requirements are fashioned for bystander cases and cannot be applied to direct victims without distortions. (*McAdams*, 638 F. Supp. 1173; *Corgan*, 167 Ill. App. 3d 1093, 522 N.E.2d 153; *Lewis*, 139 Ill. App. 3d at 638 (Linn, J., dissenting).) In *Hammond v. Lane* (1987), 162 Ill. App. 3d 17, 515 N.E.2d 828, for example, the court concluded that plaintiff, who alleged that the doctor who had been treat-

---

[2]We acknowledge that direct victims of negligence who do not suffer a contemporaneous physical impact still may not recover under the impact rule. (But see *Corgan*, 167 Ill. App. 3d at 1102, 522 N.E.2d at 159, *appeal allowed* (1988), 122 Ill. 2d 572, 530 N.E.2d 242.) We do not address the policy considerations of this issue, however, because we are without authority to overrule or modify the supreme court's decision in *Braun*. See *Rickey*, 98 Ill. 2d at 551-52, 457 N.E.2d at 3.

ing her for psychiatric disorders was professionally negligent in having sexual contact with her, did not state a cause of action because she did not allege that she was in the zone of danger and had reasonable fear for her safety. In *Lewis* (139 Ill. App. 3d 634, 487 N.E.2d 107), the court concluded that plaintiff, who herself was trapped inside the malfunctioned elevator, had not proven that she was in the zone of danger. The proximity test is not logically applied to victims who are directly involved in the very accident or mishap producing the risk.

■ Accordingly, the appropriate rule to apply in the case at bar is the impact rule. Plaintiffs, by being trapped inside the malfunctioned elevator, were direct victims of defendant's negligence. In applying the impact rule to the instant circumstances, it is evident that plaintiff's presence within the vehicle producing the accident obviates any plausible argument of the absence of a contemporaneous physical impact. Nonetheless, more perplexing questions arise regarding the injuries compensable once a contemporaneous physical impact is shown.

Plaintiffs argue that the impact requirement is a minor evidentiary hurdle that need not have a causal link to the emotional injuries. Plaintiffs, however, do not further expound upon what emotional injuries may be recovered under the rule. Defendant, relying on its position that the zone-of-physical-danger standard applies, has not addressed the requirements of the impact rule.

■ The court in *Braun*, when it denied the plaintiff recovery for her alleged physical injuries due to the absence of a contemporaneous physical impact, did not specifically address the question of what emotional injuries are compensable once a physical impact is shown. Few Illinois appellate courts since *Braun* have addressed the issue. After reviewing *Braun* and its progeny, we conclude that the impact rule allows a plaintiff who has suffered a contemporaneous physical injury or impact to recover for physical injuries resulting from emotional distress caused by defendant's negligence.

In *Rosenberg v. Packerland Packing Co.* (1977), 55 Ill. App. 3d 959, 962, 370 N.E.2d 1235, 1238, where the plaintiffs alleged that a truck driver caused them emotional distress by driving within a few feet of their vehicle at speeds up to 80 miles per hour, the court recognized two requirements of the impact rule when it found that plaintiffs failed to state a cause of action under *Braun* "since they failed to allege any bodily injury *and* since there was no physical impact between the vehicle or upon the plaintiffs' persons." (Emphasis added.) (55 Ill. App. 3d at 962, 370 N.E.2d at 1238.) It is noteworthy

that other courts since *Braun* which have denied recovery based upon the absence of a physical impact have emphasized that the plaintiffs had alleged physical injuries as a result of emotional distress. *E.g., Benza v. Shulman Air Freight* (1977), 46 Ill. App. 3d 521, 361 N.E.2d 91; *Carlinville*, 63 Ill. App. 3d 502, 380 N.E.2d 63.

The court in *Cutright v. City National Bank* (1980), 88 Ill. App. 3d 742, 410 N.E.2d 1142, suggests a further requirement that the mental disturbance be causally connected to a physical injury. In a factual situation somewhat similar to the case at bar, the court denied the plaintiff recovery for her claims of psychological disorders on the ground that the mental disturbance did not "arise from" or was not "directly connected with some contemporaneous physical injury." (*Cutright*, 88 Ill. App. 3d at 743, 410 N.E.2d at 1143.) The court relied on *Carlinville National Bank v. Rhoads* (1978), 63 Ill. App. 3d 502, 380 N.E.2d 63, a case decided before *Rickey* involving the court's application of the impact rule to a bystander situation. The plaintiff there sought to recover for physical manifestations of emotional injuries resulting from witnessing her husband's death in an automobile accident. The court's referral to a connection to a contemporaneous physical injury could be viewed as an attempt to explain the then existing law denying causes of action for mental distress arising "solely as the result of witnessing peril or harm to another." (*Carlinville*, 63 Ill. App. 3d at 505, 380 N.E.2d at 66.) In setting forth Illinois case law in the area, the court treated as separate scenarios the negligent acts alleged in *Braun* and those involving a negligent infliction of an immediate physical injury, where courts have specifically restricted recovery to the mental anguish directly connected to bodily injury. *Carlinville*, 63 Ill. App. 3d at 503, 380 N.E.2d at 65.

While the *Braun* opinion also sets forth case law regarding emotional injuries in simple negligence cases, *Braun* confronted a somewhat different situation where permanent bodily harm was alleged, but it was the secondary result of defendant's negligence in that it resulted from emotional distress caused by the defendant's negligence. In concluding on policy grounds that recovery in such circumstances could not be had absent a contemporaneous physical impact, the court's proximate cause analysis focused on foreseeable and fraudulent claims. The landmark decision on which the court relied, *Victorian Rys. Commissionors v. Coultas* (Eng. 1888), 13 App. Cas. 222, did not embrace a requirement that the emotional consequences result from a physical injury. Thus, *Braun* provided a cut-off point for liability for physical injuries resulting from emotional distress in-

flicted by defendant's negligence rather than articulating a requirement that the emotional disturbances constituting physical injury be causally linked to a bodily injury or impact.

The supreme court's discussion of the impact rule in *Rickey* lends support for this conclusion since it lacks any mention of a requirement of a causal connection between physical injuries and the impact. Furthermore, it would be illogical for the court to allow a bystander to an accident to recover physical injuries resulting from emotional distress under the zone-of-physical-danger rule, but deny a person directly involved in the mishap recovery for the same injuries because of the absence of a causal connection to a bodily injury.

Finally, we address whether plaintiffs have presented sufficient evidence to show physical injury or illness as a result of the emotional distress they suffered. Relying on the language in *Rickey*, plaintiffs argue that they have demonstrated permanent behavioral disorders which are sufficient physical manifestations of emotional distress to entitle them to recovery.

The plaintiff in *Rickey* alleged that his emotional distress became manifest in physical injury, including "definite functional, emotional, psychiatric and behavioral disorders, extreme depression, prolonged and continuing mental disturbances, inability to attend school and engage in gainful employment and to engage in his usual and customary affairs." (*Rickey*, 98 Ill. 2d at 550, 457 N.E.2d at 2.) While the court indicated that the physical injury requirement may be satisfied by physical manifestations of emotional distress, it did not rule that the alleged conditions satisfied the requirement. (See *Robbins*, 163 Ill. App. 3d at 933, 516 N.E.2d at 1027; 17 J. Marshall L. Rev. at 574 n.42 (stating that the court's reliance on the Restatement (Second) of Torts in *Rickey* suggests that the physical manifestations alleged in *Rickey* may not be recoverable).) The court stated that the facts of the case could not be precisely determined since the complaint was drawn with the wrong standard in mind. It also noted that the appellate court had improperly treated the case as one involving solely emotional distress where the complaint alleged physical manifestations. (*Rickey*, 98 Ill. 2d at 554-56, 457 N.E.2d at 4-5.) The court remanded the case for further proceedings without further comment on the sufficiency of the allegations.

We note that many jurisdictions have struggled with the determination of what conditions or symptoms qualify as the requisite injury, illness or other physical consequence to recover in negligent infliction of emotional distress cases. (See W. Keeton, Prosser & Keeton on Torts §54, at 364 (5th ed. 1984); see also *William v. Baker* (D.C.

1990), 572 A.2d 1062 (and cases cited therein).) The Restatement (Second) of Torts suggests no liability for transitory, nonrecurring physical phenomena where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm, but that long-continued physical phenomena, such as nausea or headaches, or long-continued mental disturbance, such as repeated hysterical attacks or mental aberration, may amount to physical illness. Restatement (Second) of Torts, §436A, comment *c* (1965).

It is evident from the few cases cited to us by the parties that the physical manifestation requirement has been relatively unexplored by Illinois courts. In *Robbins* (163 Ill. App. 3d 927, 516 N.E.2d 1023), the court concluded that the physical illness or injury requirement indicates a desire to permit compensation only in cases involving serious emotional distress. It found the manifestations suffered by the plaintiff for which she did not receive medical treatment—including crying, sleeplessness, increased migraine headaches and becoming upset when viewing pregnant women—to be insufficient to satisfy the physical consequences requirement. The court, in *Rahn v. Gerdts* (1983), 119 Ill. App. 3d 781, 455 N.E.2d 807, did not directly address the issue, but stated that the *Rickey* standard supported the plaintiff's cause of action where the complaint alleged that the plaintiff had been admitted to the hospital and treated for severe depression, anxiety and nervousness.

■ We need not examine further into what conditions or symptoms qualify as the requisite physical manifestations to amount to physical injury or illness because we are convinced that the manifestations to which plaintiffs have testified are not the substantial mental disturbance intended to satisfy the physical consequences requirement. Plaintiffs here suffer continued distress, nervousness and sweaty palms when on elevators, have fears of heights or crowds, and, although they have taken elevators and airplanes since the incident, they have taken some actions to avoid taking elevators or using airplanes as a means of transportation. None of the plaintiffs sought medical or psychological treatment as a result of the incident. We agree with the *Robbins* court that the physical illness or injury requirement indicates a desire to permit compensation only in cases involving serious emotional disturbance.

To allow recovery for the manifestations shown here would be inconsistent with Illinois' historical reluctance to allow recovery for emotional injuries in negligent infliction of emotional distress cases. Moreover, as recognized in *Robbins*, it would be anomalous to refuse recovery in intentional infliction of emotional distress actions for in-

juries such as continued nervousness, sleeplessness and fear of nightmares due to a lack of severity of the injuries (see *Swanson v. Swanson* (1970), 121 Ill. App. 2d 182, 257 N.E.2d 194), but to allow recovery in negligent infliction of emotional distress actions for the similar conditions suffered by plaintiffs here.

Accordingly, because the physical manifestations suffered by plaintiffs are insufficient to satisfy the impact rule's physical injury requirement, a judgment notwithstanding the verdict should have been entered.

Reversed.

O'CONNOR and MANNING, JJ., concur.